JOHN CHAPMAN ET AL. v. W. F. BRITE, ADMINISTRATOR.

No. 17.

1. **Suit Against Sureties on Administrator's Bond.**—In a suit against the sureties on an administrator's bond, for wasting and misappropriating the assets of the estate, when it is alleged and proven that the residence of the administrator is unknown and could not be ascertained by reasonable diligence, and that he was notoriously insolvent, a discontinuance can be entered as to the administrator, and judgment rendered against the sureties, whether he was cited or not.

2. **Jurisdiction of District Court.**—The final settlement of an estate in the County Court is not a prerequisite to the maintenance of a suit in the District Court to recover property or its value, misappropriated by a former administrator. The amount being over $1000, the District Court had exclusive jurisdiction.

3. **Assignment of Error.**—An assignment of error, that the court erred in overruling special exceptions 1 and 2, is not in itself a proposition, and if not followed by a proposition, will not be considered. Rule 30.

4. **Appointment of Administrator de Bonis non — Collateral Attack.**—The appointment of an administrator de bonis non, by the County Court, a court of general jurisdiction over the subject matter, can not be attacked collaterally, unless the record affirmatively discloses that the court did not have jurisdiction to grant letters.

5. **Substitution of Note.**—The unauthorized surrender of a note by an administrator, and the substitution of another in its stead, is a conversion of the assets of the estate, and renders him and his sureties liable therefor; and the liability can not be discharged by showing that the new note is in existence, and had not been paid. Nothing short of paying the original note will discharge them.

6. **Offsets, Allowed when.**—The District Court having acquired jurisdiction of the cause, its jurisdiction was coextensive with all issues to a proper determination of the subject matter at issue; and it had the power to hear evidence of offsets to the liability of the administrator offered by the sureties without such claims having the approval of the County Court.

7. **Commissions to Administrator, Allowed when.**—To the extent to which the estate has been properly administered, and on the amounts paid or made up by sureties on maladministration of estate, the administrator should be allowed such commissions as are provided by law; but when money is collected by an administrator, and upon his failure to account for it, judgment is obtained for the amount so collected, the commissions he would have been entitled to had he accounted for it should not be allowed in offset to said judgment.

APPEAL from Atascosa. Tried below before Hon. D. P. MARR.

*J. M. Eckford, W. J. Bowen* and *W. H. Smith,* for appellants.—1. Subsequent administrators can be appointed only in the same manner as provided for the appointment of original administrators. Rev. Stats., arts. 1871, 1830, 1835, 1836, 1841, 1874; Cain v. Haas, 18 Texas, 617; Mills v. Herndon, 60 Texas, 353; Murchison v. White, 54 Texas, 78; Norwood v. Cobb, 15 Texas, 500; Withers v. Patterson, 27 Texas, 491.

2. The District Court was authorized to hear evidence to prove off-sets in favor of the administrator, without such claims being allowed by the County Court. Rev. Stats., arts. 2190, 2192, 2037, 1931, 1960; Oglesby v. Forman, 77 Texas, 647; Reinstein v. Smith, 65 Texas, 247; Stonebraker v. Friar, 70 Texas, 202.

*C. A. Culberson,* for appellee.—1. A judgment appointing an administrator de bonis non can not be collaterally attacked. Thomas v. Bonnie, 66 Texas, 635; Freem. on Judg., secs. 608, 611; Grant v. McKinney, 36 Texas, 62; Martin v. Robinson, 67 Texas, 368; Giddings v. Steel, 28 Texas, 750; Simmons v. Saul, 138 U. S., 453.

2. Only such claims as had been allowed by the former administrator, and approved by the County Court, were legal offsets against the demand in suit. Rev. Stats., art. 1960; Brown v. Seaman, 65 Texas, 628; Todd v. Willis, 66 Texas, 704.

NEILL, ASSOCIATE JUSTICE.—This suit was instituted by appellee, as administrator de bonis non of the estate of P. O'Neill, deceased, against J. J. Birmingham, as principal, and John Chapman, R. A. Goins, and W. H. Chapman, as sureties, on the bond of Birmingham as administrator of said estate.

The plaintiff alleged, that he was administrator de bonis non of the estate of P. O'Neill, deceased, duly appointed by the County Court of Atascosa County, at the February Term, 1890. That J. J. Birmingham was duly appointed administrator of said estate, in November, 1888, and gave bond as such administrator; and that afterwards, on the 3rd day of January, 1889, after citation to file a new bond, he executed and filed a new bond in the County Court of said county as administrator of said estate, in the sum of $8000, payable to the county judge of Atascosa County and his successors, with John Chapman, R. A. Goins, and H. W. Chapman as his sureties, conditioned that the said Birmingham should well and truly perform all the duties required of him under said appointment. That after filing said bond, there came into Birmingham's hands, as administrator of said estate, personal property, money, and notes, specifying the various items and value, which he unlawfully wasted and converted to his own use, to the damage of the estate in the sum of $7500. That on the 27th of September, 1889, an order was made by the county judge of Atascosa County, requiring Birmingham to file a new bond within twenty days; and that on the 9th day of November, 1889, he having failed to file a new bond as required by the order, he was by said court removed from further administration of said estate, and required to file his final report and make his final settlement as administrator on or before the next regular term of said court, and turn over to the administrator de bonis non all assets in his hands belonging to said

estate. That he failed to comply with said order. The petition further alleged Birmingham's residence is unknown and that he can not be found. That appellee had made demand on said sureties on his bond to make good the default of their principal, and that they refused to do so.

The defendants John Chapman, R. A. Goins, and W. H. Chapman answered by pleading, first, to the jurisdiction of the court; second, in abatement, alleging the illegality of the appointment of plaintiff as administrator of P. O'Neill, and want of authority in the court to make such appointment; third, the nullity of the appointment of plaintiff as administrator, and want of legal capacity to sue. Said defendants then excepted generally and specially to plaintiff's petition, and answered by a general denial, and by specially denying, (1) that plaintiff was legally appointed administrator of O'Neill's estate; (2) plaintiff's legal capacity to sue; (3) that J. J. Birmingham is a nonresident of this State, or that his residence can not be ascertained by reasonable diligence; (4) that he is insolvent; (5) that certain items specified in plaintiff's petition were owned by the intestate, or that certain other items were destroyed, wasted, converted, misapplied, or otherwise improperly used by Birmingham; (6) that Birmingham ever collected $4500.60 from Musgrave, Mansfield, and Dorsey, the proceeds of the sale of sheep, or misapplied the proceeds of the note given therefor, and alleged that said note had never been paid.

The said defendants specially plead, that on the application of his sureties, heard on September 27, 1889, Birmingham was required to give a new bond within twenty days from the date of said order, which suspended all his functions as administrator of said estate until said order was complied with, which order was of record, and notice to the purchaser of said sheep and his sureties on said note; and if there was an arrangement made between Birmingham and the purchaser of said sheep and his sureties on said note, the same was made subsequent to the date of said order of the County Court, and was illegal and void, and did not relieve the makers from liability on said note, and that defendants are not liable for the amount for which the sheep were sold. That one John Dorsey is indebted to Birmingham, as administrator of said estate, in the sum of $1800, in respect to or growing out of the sale of said sheep, which amount is and was a part of the assets of said estate, and should be deducted from any claim plaintiff may have against said Birmingham in connection with the sale of said sheep or the proceeds of the same.

Defendants plead as setoffs, and that certain sums of money, giving amounts, were expended by Birmingham to take care of the property of the estate, and in paying the current expenses of running the ranch, and that certain sums were due Birmingham for personal services in the care and preservation of the property of the estate, for attorney fees, commissions, and debts of said estate paid by Birmingham.

The plaintiff discontinued as to Birmingham. And on the 1st of October, 1890, the plea to the jurisdiction and exceptions of defendant were overruled, and the case was tried by a jury, and verdict returned in plaintiff's favor against the defendants John Chapman, R. A. Goins, and W. H. Chapman for $5652.60, upon which the judgment was rendered from which this appeal is prosecuted.

*Conclusions of Fact.*—1. The appellee, W. F. Brite, was appointed by the County Court of Atascosa County, on the 8th day of February, 1890, administrator de bonis non of the estate of P. O'Neill, deceased, and qualified as such administrator on the 15th day of February, 1890, upon which day letters of administration were issued on said estate by said court.

2. J. J. Birmingham was duly appointed administrator of the estate of P. O'Neill by the County Court of Atascosa County on November 9, 1888, and that on said day he qualified as such administrator.

3. On January 3, 1889, by an order of the County Court of Atascosa County, Birmingham was required to file a new bond as such administrator, and on the same day he, as administrator of said estate, with John Chapman, H. W. Chapman, and R. A. Goins as sureties, filed in said court a bond, payable and conditioned as required by law, in the sum of $8000, which bond was of that date, and then duly approved.

4. That as such administrator he received property belonging to said estate, exclusive of realty, of the appraised valuation of $4070.60.

5. That the property of the above valuation included 3600 sheep, appraised at $3300, of which 3462 head were sold by Birmingham, under an order of court of February 13, 1889, on a credit of six months, for $4500, to Bennett Musgrave, for which sum he executed his note, bearing interest from maturity at 10 per cent per annum, with F. M. Mansfield and Dorsey as sureties, to said administrator.

6. That he sold, by virtue of an order of court, certain other property, which was appraised in the inventory at $150, for $369.75, for which a note was executed.

7. That on the 17th day of September, 1889, John Chapman and R. A. Goins filed their petition in said County Court, praying that Birmingham be required to give a new bond; in which petition they alleged, that his bond was insufficient in amount; that the character of the property had changed since they became his sureties, and that said administrator had removed or was about to remove his property from the State; that he had violated the conditions of his bond, and was incompetent and unfit to attend to the business incident to the estate, and was not conducting the same according to law. Upon this application, the court found that Birmingham's bond was wholly insufficient in amount to protect and secure the estate, and on September 27, 1890, ordered that he

enter into a new bond in the sum of $12,000 within twenty days from that date.

8. At the November Term of said court an order was entered, removing Birmingham as administrator of O'Neill's estate, and requiring him to make final settlement of the estate at the next term of court, and to turn over to the administrator de bonis non assets in his hands belonging to said estate.

9. That on the day judgment was rendered, the assets of the estate, exclusive of the realty which came into Birmingham's possession as administrator of said estate, if accounted for, would have been worth $7332.25. In this estimate the amount realized on the sale of property in excess of its appraised value, property not inventoried, and the interest on the notes given for the purchase money of property sold by Birmingham, are considered.

10. That the appellee never received any of the property or notes of the estate, except the note of $369.75, which he obtained from Birmingham's attorney. That claims allowed and approved were paid by said Birmingham aggregating $688.80.

11. That all the other essets of the estate, amounting in the aggregate to $5652.60, were appropriated by Birmingham to his own use or squandered by him.

12. That Birmingham abandoned Atascosa County in October, 1889,. and from that time to date of judgment his residence was unknown.

*Conclusions of Law.*—Before the case was called for trial, appellee entered a discontinuance as to Birmingham. It was alleged and proven, that his residence was unknown, and could not be ascertained by the use of reasonable diligence, and that he was actually and notoriously insolvent. The court instructed the jury, if it was not proven that Birmingham's residence was unknown, or that he was actually or notoriously insolvent, judgment could not be rendered against appellants. The statute authorized the discontinuance as to him, but made it obligatory on the appellee to allege and establish that his residence was unknown and could not be ascertained by the use of reasonable diligence, or that he was actually or notoriously insolvent, before he could obtain judgment against the sureties on his bond. This obligation having been met and discharged, shows that no error was committed in entering such discontinuance. It was immaterial whether he had been cited in the case or not, if the conditions prescribed by statute that authorized judgment against his sureties were performed, the discontinuance was properly entered.

The final settlement of the estate of decedent in the County Court was not a prerequisite to the maintenance of the suit in the District Court to recover the property or its value misappropriated by the former admin-

istrator. The amount in controversy being over $1000, the District Court had exclusive cognizance of it. Fort v. Fitts, 66 Texas, 593.

Therefore it was not error for the court to overrule appellants' plea to its jurisdiction.

The third assignment of error is, that the court erred in overruling the general exceptions and special exceptions numbers 1 and 2 to plaintiff's petition. This assignment is not in itself a proposition, nor is it followed by one. It will not be considered. Rule 30.

The fourth, fifth, sixth, seventh, and eighth assignments of error call in question the validity of appellee's appointment as administrator of O'Neill's estate. The question was raised by a plea of abatement, which was not sworn to. The court permitted the records of the County Court relating to and affecting the appointment to be read in evidence, but refused to hear parol testimony impugning its validity; and refused to submit the plea to the jury, for the reason that the records of the County Court did not disclose that the appointment of the administrator de bonis non was illegal, and that said court being one of general jurisdiction over the subject matter, its action was final and conclusive and not subject to collateral attack. In this we think there was no error. Lyne v. Sanford, 82 Texas, 63; Alexander v. Maverick, 18 Texas, 179; Hurley v. Barnard, 48 Texas, 87; Gilford v. Love, 49 Texas, 715; Williams v. Ball, 52 Texas, 608; Murchison v. White, 54 Texas, 83; Heath v. Layne, 62 Texas, 691. It is only when the record affirmatively discloses that the court did not have jurisdiction to grant the letters of administration that the order making the appointment can be collaterally attacked. Harwood v. Wylie, 70 Texas, 540; Duncan v. Veal, 49 Texas, 604; and Merriweather v. Kennard, 41 Texas, 273, are cases illustrative of this principle.

On the trial of the case, one J. H. Dorsey having testified that he was one of the sureties on the note of $4500 given by B. Musgrave to Birmingham as administrator of said estate, and that upon settlement of said note he gave his note for $1800 and had not paid it, appellants then offered to prove by Birmingham's attorney, that he had said note for $1800 in his possession, that it was payable to Birmingham, as administrator, and had never been paid by him. Upon objection of appellee the testimony was not admitted. The action of the court in rejecting it is assigned as error. The court gave as its reason for excluding the testimony, "that the attorney had testified that he did not remember whether the $1800 note was made payable to Birmingham personally or as administrator; that the evidence offered was immaterial, because Birmingham, as administrator, had no authority to compromise or take other or different notes or security in lieu of the $4500 note given for property which had been sold under an order of court, unless specially authorized by the County Court to change such security, and because the note had not been

produced or accounted for or turned over to Birmingham's successor, and was inaccessible to said administrator."

The unauthorized surrender of the note for $4500 and substituting another in its stead was a conversion by Birmingham of the assets of the estate to his own use, and render him and his sureties liable for such misappropriation, and the liability could not be discharged by showing that the new note was in existence and had not been paid. Nothing short of paying the original note in full would have discharged it. There was no error in the court's excluding the testimony. Nor was there error in the court's refusal to permit appellants to introduce in evidence the account of Oppenheimer against the estate, for the purpose of showing that an item therein of $378.50 was a credit in favor of the estate. The account had been rejected by the County Court as a claim against the estate, and was not evidence to prove anything.

The sworn statement and accounts of J. J. Birmingham as administrator of O'Neill's estate, filed in the County Court, were not in and of themselves, in the absence of an order by the County Court approving them, admissible in evidence; and if they had been tendered without evidence to show the justness and correctness of the items in the accounts as such claims, they would have been properly excluded. But counsel offered witnesses to prove that they were such claims; and the court refused to hear any evidence on the subject, upon the ground that no such claims, credits, or offsets could be admitted or allowed in behalf of appellants, except such as had been allowed by the administrator and approved by the County Court. All that were so allowed and approved were admitted, but those not were excluded; the court giving as a reason for such ruling, " that the administrator de bonis non had full authority under the statute to settle with his predecessor, and such claims as had not been allowed by the County Court should be presented to him and then to the County Court; and that no claim for expenses or compensation could be legally an offset in this suit, which had not been passed on by the Probate Court, the proper tribunal to adjust such matters in the first instance." We think the assignment of error to the action of the court in excluding evidence offered to establish said claims in favor of appellants, as offsets to the liability of Birmingham for misappropriating assets of the estate, is well taken.

We are of opinion that the proposition of appellants' counsel under this assignment, " that the District Court having acquired jurisdiction of the cause, its jurisdiction was coextensive with all questions or issues necessary or proper to be ascertained upon a final determination of the subject matter in issue between the parties," is correct. It is a principle of natural justness and of the law, that a person who is proceeded against in a court shall have a full and fair opportunity to make his defense. This opportunity to the defendant to be heard is an essential element to jurisdiction;

and if the appellants had no right to be heard on an issue, if established in their favor, that would lessen their liability, complete justice could not be done in the case, which would demonstrate that the court was without authority to hear and determine it.

The District Court did not have to await the action of the County Court on matters to be determined that were essential to its proper disposition of the cause; but having assumed jurisdiction, it was its province to dispose of every issue necessary to the dispensation of complete justice between the parties. If the claims sought to be established by appellants against the estate had been proved as just, they would have, pro tanto, diminished appellee's demand against them; and it was not necessary to have them allowed and approved in the County Court as a prerequisite of their being used as an offset in this case. Mitchell v. Rucker, 22 Texas, 67; Bank v. Cresson (Texas), 12 S. W. Rep., 819.

When Birmingham was discharged by the order of the County Court, his connection with that court and the estate was severed, and neither he nor his sureties were subject to its orders. Fort v. Fitts, 66 Texas, 594.

In view of the disposition this court will make of this appeal, we deem it proper to suggest for the guidance of the District Court on its trial of the issue for which it will be remanded, that it has been frequently held by courts of other States that compensation should be refused an administrator if he has been guilty of willful default or gross negligence in the management of the estate, whereby it has suffered loss. Brooks v. Jackson, 125 Mass., 307; Clauser's Estate, 84 Pa. St., 51, 54; Smith v. Kennard, 38 Ala., 695.

"The principle upon which compensation is refused is, that where the estate has suffered loss by the dereliction of the administrator, the loss will not be enhanced by the allowance of commissions. But when the loss arising out of misconduct is made up to the estate, so that the beneficiaries get the full benefit of a vigorous and efficient administration, it is neither just nor logical that a bonus should be granted to them in the shape of commissions denied the administrator, thus increasing the burden which, in such cases, usually falls upon the delinquent sureties. To the extent to which the estate has been properly administered, and on the amounts which he or his sureties pay, or make up for the losses by devastavit or maladministration, the administrator should be allowed such commissions as the statute provides." 2 Am. Law of Administration (Woener), sec. 526.

But where money is collected by an administrator, and upon his failure to account for it judgment is obtained against him for the money so collected, the commissions he would have been entitled to if he had properly accounted for it should not be allowed him in offset to such judgment, for the reason that the administrator de bonis non would be entitled

to his commissions for collecting the judgment, and if the defaulting administrator was allowed commission also, the estate would be made to pay commissions twice for a collection it would not have had to pay but once if the administrator had discharged his duty. Nor do we think an administrator should be allowed to offset a claim for the value of property of the estate he had appropriated to his own use, by expenses incurred by him in its care and preservation, unless his care and preservation enhanced its value, and such enhanced value is made the measure of his liability; in which event his reasonable expenses in such care and preservation, not to exceed the amount the property has been increased in value by reason thereof, should be allowed.

In this suit the nature of the offsets claimed by appellants does not sufficiently appear from the pleadings to enable this court to determine whether, under the principles enunciated, they should be allowed. This can only be ascertained by the trial court upon the proper pleadings and proof.

In this case every issue was correctly determined by the court below, except the one as to certain claims alleged to be in favor of the former administrator for money paid out by him in the care and preservation of the estate, and commissions, and plead in offset by appellants. And it is not necessary nor proper that the issues which have been correctly adjudicated in appellee's favor should be reopened and again tried. Therefore the judgment of the District Court against appellants for $5652.60 is affirmed, subject to any legitimate offsets or credits in favor of Birmingham which were plead or hereafter may be plead, and which were not considered by the District Court in said judgment, that may be established by proper and competent testimony; and the cause is reversed and remanded solely for the purpose of allowing appellants to establish by competent testimony, if they can, such offsets as the court below refused to take cognizance of, and to plead and prove any legitimate offsets or credits that may have accrued in their favor since the trial; and the District Court is instructed to restrict the trial of the case to such matters, and if any legitimate offsets are established on such trial, to deduct the amount from said judgment of $5652.60, as though such offsets had been proven on the former trial, and as of that date.

*Reversed and remanded.*