## T. M. STROUD v. H. P. HAWKINS ET AL.

Decided February 1, 1902.

**1.—Guardian's Sale—Confirmation—Conclusiveness—Collateral Attack.**

The confirmation of a guardian's sale of land is conclusive as to the authority of the guardian to sell and the necessity for the sale, where the sale is attacked collaterally, as by trespass to try title for the property.

**2.—Same—Sale Long After Application Therefor.**

The probate court has the power to approve a sale made under an application granted five years before.

**3.—Same—Cash Sale—Payment on Property.**

A guardian's sale reported as made for cash and duly confirmed by the court is not rendered void by the fact that the payment was in property, where the purchaser acted in good faith and paid full value in such property.

**4.—Same—Trust Not Created.**

Where the guardian acted in good faith in receiving property instead of cash for the ward's land, and charged himself with the value of the property, and was solvent and fully able to account for such value, equity will not declare a trust in the favor of the minor.

**5.—Same—Limitations—Minor.**

The ward's right to recover the land itself upon the theory of a trust in his favor would be barred in four years after he attained majority with knowledge of all the facts and circumstances of the sale, and the character of the purchaser's possession showed conclusively that he never recognized the existence of any trust.

Appeal from Hill. Tried below before Hon. Wm. Poindexter.

*R. T. Jones, Clark & Bollinger,* and *Vaughan, Works & Clarke,* for appellant.

*A. P. McKinnon, A. Carlton,* and *Wear, Morrow & Smithdeal,* for appellees.

TEMPLETON, ASSOCIATE JUSTICE.—This suit, which was originally in the form of an ordinary action of trespass to try title, was brought on March 12, 1898, by the appellant T. M. Stroud, against the appellee H. P. Hawkins. On January 25, 1899, the plaintiff filed an amended petition and made his sister, Ora Stroud, a party defendant. It was alleged in the amended petition that the land sued for, which is a lot in Hillsboro, was inherited by the said T. M. and Ora Stroud from their mother when they were minors; that their father, E. B. Stroud, was the legally appointed and qualified guardian of their estates, and that on February 26, 1885, he, as such guardian, obtained an order to sell the said lot; that on February 20, 1890, the guardian filed a report showing a sale of the lot to H. P. Hawkins for the sum of $4000 cash, which report was duly approved eight days later; that in fact Hawkins did not pay cash, but settled for the lot bought by deeding to the guardian certain lands and turning over to him an interest in a mercantile business;

that there was no necessity for said sale; that the guardian and Hawkins acted fraudulently in said transaction for the purpose of converting said lot to their own private benefit, and that Hawkins therefore held the lot in trust for the real owners, the said T. M. and Ora Stroud, and was not vested with the equitable title.

The pleas of the defendants need not be noticed further than to say that the same were sufficient to raise all the defenses considerd in the trial. The case was tried before the court without a jury and judgment was rendered for the defendants. The trial judge filed conclusions of fact which are supported by the evidence and the same are therefore adopted. The conclusions are here inserted:

"1. I find that Olivia Stroud, the wife of E. B. Stroud, and the mother of the plaintiff, died about May ——, 1884. That at the time of her death she owned the east half of lot No. 2 in block No. 6 in the city of Hillsboro, described in plaintiff's petition.

"2. I find that Olivia Stroud left surviving her two children, to wit, T. M. Stroud, plaintiff herein, and Ora Stroud, a daughter, which said two children inherited the whole of the property so owned by the said Olivia, at the time of her death.

"3. I find that on December 1, 1884, by an order of the County Court of Hill County, Texas, E. B. Stroud was appointed guardian of the estates of his children, Thomas and Ora Stroud. That said order was entered on a proper application that was made by the said E. B. Stroud, and that said E. B. Stroud duly and legally qualified as such guardian.

"4. I find that on the 26th day of February, 1885, the County Court of Hill County, Texas, by its order, duly entered, directed the sale of the property in controversy, so owned by the plaintiff, T. M. Stroud, and said Ora Stroud. That said order was made upon a proper application; it recited a necessity for the sale and was in due and legal form.

"5. I find that on February 20, 1890, the guardian, E. B. Stroud, filed in the County Court of Hill County, Texas, a report of the sale, in which he recites that he had sold to H. P. Hawkins the lot in controversy for $4000 cash, said property reported to have been sold as the property of the wards, Thomas and Ora Stroud, the said report of the sale being in due and proper form.

"6. I find that on February 28, 1890, the County Court of Hill County, Texas, by its judgment, duly entered, confirmed and approved the sale reported to have been made to the said Hawkins and directed the guardian, E. B. Stroud, to make him, the said Hawkins, a deed to the said property.

"7. I find that on the 28th day of February, 1890, the said E. B. Stroud, as guardian of the minors, T. M. and Ora Stroud, did make to H. P. Hawkins a deed conveying to him, the said Hawkins, the land in controversy, this deed properly describing the land in controversy; also reciting the orders of the probate court above mentioned and showing that the same was made in compliance with said order.

"8. I find that the $4000 was not paid in actual cash, but same was paid by the said H. P. Hawkins conveying to the said E. B. Stroud, as guardian of the minors, certain other real estate situated in Hillsboro, Texas, and also by turning over to the said Stroud an interest owned by the said Hawkins in a hardware business then being conducted in the city of Hillsboro. At the time the transfer was made the hardware business had to its credit in a bank at Hillsboro the sum of $1212.42, in which the said Hawkins owned a little more than one-third interest, and this cash went to the said Stroud along with the hardware business.

"9. I find as a matter of fact that the said property so conveyed by said Hawkins to the said minor children and their guardian, was equal in value to the consideration named in the deed from said Stroud, guardian, to the said Hawkins, and was equal in value to the property said Hawkins received. I further find that at this time the said E. B. Stroud was solvent and worth above his liabilities something like $25,000 or $30,000. I further find that thereafterwards, and before the majority of either of the said wards, he, the said E. B. Stroud, guardian, converted the property that he had received into actual cash, and that he received for it a larger amount than its estimated value at the time the trade was made.

"10. I further find that on August 7, 1890, the guardian, E. B. Stroud, filed in the probate court an account showing among other things that he had received, and then had in his hands as coming from the sale of his wards' property, a part of which was the property in controversy the sum of $13,000; his account showing a balance due his wards amounting to $11,312.60. From this account the following is quoted: 'I have invested $7550 in purchasing an undivided interest of one-half in the Hawkins Hardware Company building and lot, situated in the town of Hillsboro, Texas, and taking the deed in the minors' names I hereby ask the court to ratify the same. I have the other loaned out at 12 per cent interest, to wit, the sum of $3762.62.' This report was examined and approved by a formal order of the court.

"11. I find that this suit was originally brought as an ordinary action of trespass to try title on the 12th day of March, 1898. That the plaintiff's first amended petition, on which the case was tried, was filed January 25, 1899. I find that on February 25, 1898, the plaintiff, T. M. Stroud, instituted a suit in the District Court of Hill County, Texas, against his guardian and the bondsmen of his guardian, wherein he sought to recover the amount that he claimed was owing to him by his guardian. That in the petition filed in said suit on said bond various acts of mismanagement on the part of his guardian were alleged, among which was what was claimed to be an unlawful disposition and squandering of the whole of the property owned by the said wards. The petition averred that the guardian had sold all of the property belonging to the estate, when in fact there was no necessity for such sale. No proof was offered as to whether the bondsmen were solvent or insolvent, but

the suit is still pending and the court finds that it is presumed that the bondsmen are solvent.

"12. I further find that on the 12th day of November, 1896, E. B. Stroud made a deed of trust to J. D. Warren, trustee, to secure certain creditors of the said Stroud, conveying to him, the said Warren, in trust, a large stock of goods, wares, and merchandise, furniture and fixtures, then situated in Hillsboro, as well also as sixty shares of the capital stock of the Stroud-Gibson Grocery Company, a corporation; that the plaintiff in this case was named in the deed of trust as one of the creditors of the said E. B. Stroud; that the said debt admitted to be owing by the said Stroud to his said wards, and mentioned in said deed of trust, grew out of the sales that the guardian had made of the property of the said wards, of which the property in controversy was a part; that the said T. M. Stroud formally accepted the benefits of the said instrument in writing; that the said trustees afterwards sold said property, and the said T. M. Stroud accepted his pro rata part of the proceeds of said sale, which amounted to something like $150.

"13. The court finds that on the 9th day of March, 1896, E. B. Stroud conveyed to plaintiff, T. M. Stroud, a certain lot of land in Hillsboro, Texas, which recited the following as a consideration: 'That in consideration of the sum of $1200 to me in hand paid by T. M. Stroud, etc., being a part of what I am due said T. M. Stroud as guardian;' that the said T. M. Stroud accepted said deed and afterwards sold the said lot and appropriated the same to his own use and benefit. I find that the property when sold to Stroud, that is, to T. M. Stroud, was worth some $1500, against which there was a lien of $700, but that said T. M. Stroud, when he sold it, only realized something like $300 or $400 over and above the lien on the property.

"14. That H. P. Hawkins took possession of the property in controversy on February 28, 1890; that he has been in peaceable and adverse possession ever since said time, using and enjoying the same and paying all taxes thereon. That the original deed made to him by Stroud, as guardian, was duly acknowledged and filed for record immediately after his execution; that his possession of said property has been actual, notorious, and visible.

"15. The court finds that the plaintiff T. M. Stroud attained his majority on the 28th day of February, 1894, and before this time he had been fully apprised by his father of the fact of the sale of the land in controversy to Hawkins, and knew the terms and conditions of this sale.

"16. I further find that there was no actual fraud intended or committed in the sale to Hawkins by the guardian, E. B. Stroud; that the said Stroud at the time was solvent and amply able to answer to his wards for the value of the property, and elected to consider what he got from Hawkins as money, intending at the time to answer to his said wards for that amount.

"17. I further find that the bringing of the suit for this land was

an afterthought on the part of plaintiff. With knowledge of the facts the plaintiff accepted his father as a creditor on account of the dealings with his property. He received various sums of money that came, at least indirectly, from the proceeds of the property that was by Hawkins turned over to the guardian. He expressed himself as satisfied with his father's transactions in respect to the matter. As long as his father remained solvent he made no question as to the legality of the sale, and it was long after his father had failed in business before he contemplated the bringing of this suit. By his various acts and doings above mentioned and recited in the other findings herein made, the said plaintiff acquiesced in the sale that had been made to Hawkins."

This is not an action to set aside the order of the probate court confirming the sale made by the guardian to Hawkins, and the order of confirmation can not be questioned in this suit, but is entitled to absolute verity. Whatever questions were settled by the order of confirmation can not be reopened now. Crawford v. McDonald, 88 Texas, 626. When the report of sale was made, the court had authority to determine whether the guardian was empowered to sell, and whether there was a present necessity for the sale. These questions were concluded by the order approving the report of sale. The statute fixes no time within which the sale shall be made after the granting of the application therefor, and the court had the power to approve the sale made under the application granted five years before, without requiring a new application. Butler v. Stephens, 77 Texas, 599. When the court approved the sale it necessarily recognized as valid the order under which the guardian acted. The fact that Hawkins paid for the lot in property instead of in cash would not render the sale void. Perry v. Blakey, 23 S. W. Rep., 807. When the report of sale was made and approved the guardian and his bondsmen became liable to the wards for the purchase money of the property sold, and the title to the property passed to the purchaser. Taffinder v. Merrell, 65 S. W. Rep., 177. The order of the probate court confirming the sale is the act which vests title, and the purchaser is protected thereby while the order stands unreversed, if the probate court had jurisdiction to enter it. Brown v. Christie, 27 Texas, 77; Corley v. Gall, 27 S. W. Rep., 821; Chapman v. Brite, 23 S. W. Rep., 514; Heath v. Lane, 62 Texas, 691. The irregularities attending the sale in question, while they may have been such that the probate court would have been authorized to refuse to confirm the sale, or to set it aside after confirmation were not such as to render the sale void. The legal title to the lot undoubtedly passed to Hawkins, and he took the equitable title also, unless there was such fraud in the transaction as to create the trust set up by appellant.

The trial judge's findings of fact upon the question of fraud disposes of the trust issue against the appellant. In Fisher v. Wood, 65 Texas, 205, and McCampbell v. Durst, 40 Southwestern Reporter, 315, it was held that a fraudulent purchaser would not be protected by the

order confirming the sale, and that such purchaser held the property bought in trust for the real owner. In those cases the pretended purchasers were interested in the administration; were guilty of collusion and fraud, and did not pay the purchase price of the property sold. Such is not the case here. Hawkins was not in any way connected with or interested in the estates of the minors. He acted in good faith and paid for the lot in property equal to the value of the agreed purchase price and which was accepted by the guardian in lieu of the cash. The guardian charged himself with the amount for which the lot was sold. He intended no fraud or wrong, and was solvent and abundantly able to account to the minors for all that he was owing them. The alleged devastavit occurred years after the sale to Hawkins. Appellant contends that the facts show constructive if not actual fraud, for the reason that all the proceedings leading up to and connected with the sale were not strictly regular, and that Hawkins was bound to take notice of the irregularities. The effect of this contention is that any irregularity occurring in such sales, though not of a character to render the sale void, would nevertheless amount to constructive fraud, and the purchaser, however innocent he might be in fact, would take the title in trust for the minors. Of course such contention can not be sustained, as it would be inequitable and would preclude all business dealings with such property. Equity will declare a trust in these cases only where the purchaser is guilty of such acts as amount to fraud, and as appellant has failed to establish fraud, he has shown no right to recover.

But, even had appellant established the trust set up, his cause of action in that regard was barred by the general four years statute of limitations when this suit was brought. He seeks to avoid the application of the statute to his case by invoking the rule that limitation will not run in favor of the trustee and against the cestui que trust until the trustee has disavowed the trust and the beneficiary has notice thereof. The rule propounded is sound, but the facts do not bring this case within the rule. Appellant reached his majority and was made aware of all the facts more than four years before he sued. The circumstances attending the purchase by Hawkins and the character of his possession showed conclusively that he never recognized the alleged trust, and that he claimed and held as owner and not as trustee. As appellant knew the facts, the statute would apply, and his cause of action, if he ever had one, is barred.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.