## HOME INVESTMENT COMPANY ET AL. V. H. B. STRANGE.

### No. 2516.   Decided December 21, 1918.

**1.—Limitation—Amendment—Recovery of Land—Alternative Damages.**

In a suit for recovery of land seeking to establish that title from a third party was taken by defendants in trust for plaintiff, an amendment claiming damages in case part of the property had been sold by defendants was not a new cause of action, but a mere enlargement of the remedies claimed. (Pp. 347, 348.)

**2.—Same.**

An action to recover land, title to which defendants were charged to have taken and held in trust for plaintiff, and for damages where it appeared that defendants had sold any of same, was not a suit for debt, nor barred as such by limitation in two years from its accrual, whether governed by the general statutes of limitation, or by those applying to actions to recover real estate. (P. 348.)

**3.—Limitation—Trust.**

In an action to enforce a trust, limitation runs from the time that the beneficiary had notice of the repudiation of the trust by the trustee. (P. 348.)

**4.—Trust—Attorney and Client—Claiming Title to Land.**

An attorney who has undertaken to clear or acquire the title to land for his client, and taking, while that relation continues, conveyance to himself of title thereto held by a third person, holds the title so acquired in trust for his client. (P. 349.)

**5.—Fraud—Trust—Equity.**

Defendant, an attorney employed by plaintiff to clear or obtain title to land, had taken conveyance from third parties to himself, not to his client. In an action by the client to recover such lands, or their value if resold, on the ground that defendant must be held to have taken the title in trust for him, defendant was entitled, on plaintiff recovering judgment, to reimbursement from him for purchase money paid to procure ·the title. Plaintiff seeking equitable relief was bound to do equity so far, though defendant should be held to have acted fraudulently, and to do so was a necessary part of his case for recovery. It would seem to be otherwise as to the attorney's expenses incurred and compensation for his services, these not being the consideration moving to the conveyance creating the trust. (Pp. 349, 350.)

**6.—Practice on Appeal—Rendition or Remand.**

The amounts which a litigant was required to tender in order to do equity as a condition of equitable relief not being found by the courts below, the Supreme Court was without power to determine them from the evidence as a question of fact, and render judgment thereon. (P. 350.)

### ON MOTION TO REFORM AND AFFIRM.

**7.—Same.**

Where the amounts which plaintiff should be required to repay defendant as a condition of equitable relief were not found on the trial, but were established by uncontradicted evidence and admitted by plaintiff, the Supreme Court, on reversing because they were not allowed the defendant, need not remand for their ascertainment, but could reform and render the judgment. (P. 351.)

ON SECOND MOTION TO REFORM.

**8.—Appeal—Sureties—Judgment.**

Where the judgment appealed from is not affirmed, but so reformed that appellant in part prevails, judgment should not go against the sureties on his appeal and supersedeas bond.  (P. 351.)

**9.—Special Issues—Immaterial Question.**

A trustee, being sued by the beneficiary to recover the trust estate, requested the submission of a special issue as to whether he had voluntarily offered to convey it.  Held an immaterial issue because:  (1)  Such offer did not deprive plaintiff of his right to present relief;  (2) it was an offer to convey, not to plaintiff, but to him and another;  (3) it was conditioned on payments the trustee was not entitled to exact, these being limited to expenditures by him, constituting purchase money of the land.  (Pp. 351, 352.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Dallas County.

The Home Investment Company and others, defendants in the trial court, appealed from a judgment recovered against them by Strange; and on its affirmance they obtained writ of error.

*Leake & Henry, N. L. Lindsley,* and *W. J. Moroney,* for plaintiffs in error.—Defendants were entitled to judgment because there is no evidence that plaintiff ever offered to do equity by reimbursing defendants for the cost of the property acquired by them, upon receipt by plaintiff of a conveyance of said property, and the uncontradicted evidence affirmatively shows that plaintiff failed and refused to do so when given the opportunity.  Summerhill v. Hanner, 72 Texas, 224; Wachsmith v. Sims, 32 S. W., 822; New England Loan Co. v. Willis, 19 Texas Civ. App., 128, 47 S. W., 389; Heinze v. Marx, 4 Texas Civ. App., 599, 23 S. W., 704; McWilliams v. Thomas, 74 S. W., 596.

While, perhaps, as a general rule, the holder of the legal title may recover the property on such title without discharging equities, unless such equities are pleaded and proven by the defendant, this general rule has no application to a suit against the holder of the legal title by a plaintiff who has no actual title, legal or equitable, but who is attempting to subject the property to an alleged constructive trust.  A plaintiff who has no title, but who sues the holder of the legal title, charging defendant as a constructive trustee, can not recover in a court of equity without doing equity and reimbursing defendant for all disbursements in acquiring the property that are shown by the evidence, whether such disbursements are specially pleaded by the defendant or not.  Baker v. Humphrey, 101 U. S., 494; Morrison v. Thomas, 92 Texas, 333; Eoff v. Irvine, 108 Mo., 378, 32 Am. St., 609; Davis v. Smith. 43 Vt., 269; Douglas v. Blount, 95 Texas, 368, 377.

The two years statute of limitations applies to this case.  Gordon v. Rhodes & Daniel, 116 S. W., 40; same case, 102 Texas, 300; Bass v. James, 83 Texas, 110; Schneider v. Sellers, 98 Texas, 380; Sanborn v. Plowman, 20 Texas Civ. App., 484, 49 S. W., 639; Bear v. Marx, 63

Texas, 301; Walter A. Wood. M. & R. Mach. Co. v. Hancock, 4 Texas Civ. App., 302, 23 S. W., 384; Railway Co. v. McAnulty, 26 S. W., 414; Coleman v. Ebeling, 138 S. W., 199.

*Carden, Starling, Carden, Hemphill & Wallace,* for Western Cas. & Guar. Co., surety for appellants, on motion to reform judgment first rendered.

*L. C. McBride,* for defendant in error.—As bearing generally upon many of the numerous contentions of plaintiffs in error, we refer the court to the following cases: Stanwood v. Wishard, 134 Fed., 959; Stanwood v. Wishard, 128 Fed., 499; Garinger v. Palmer, 126 Fed., 906; Levara v. McNeny (Neb.), 102 N. W., 1042; Giddings v. Eastman (N. Y.), 5 Paige, 561; Eoff v. Irvine, 108 Mo., 378, 18 S. W., 907; Henry v. Raimann, 25 Pa., 354; Palms v. Howard (Ky.), 112 S. W., 110; Stone Cattle & Past. Co. v. Boon, 73 Texas, 566; Caldwell v. Firth, 91 Fed., 177.

The maxim that he who seeks must do equity will not be applied in favor of one guilty of actual fraud by requiring restoration to him in such a manner as to enable him to obtain an advantage or security in the perpetration of the fraud. King v. Ordway, 73 Iowa, 735, 36 N. W., 768; Goble v. O'Conner, 43 Neb., 49, 61 N. W., 131; Summers v. Abernathy (Mo.), 136 S. W., 289; Luther v. Luther. (Pa.), 89 Atl., 675.

While he who seeks must do equity, a tender of performance of plaintiff's obligation before commencing suit is never necessary where defendant without fault of plaintiff has refused to perform. Scott v. Beach, 172 Ill., 273, 50 N. E., 196; Auxier v. Taylor, 102 Iowa, 673, 72 N. W., 291; McPherson v. Fargo (S. D.), 74 N. W., 1057, 66 Am. St., 723.

We supplement Spann v. Sterns, 18 Texas, 556, with the following conclusive Missouri authorities announcing the rule that equity will not require an offer to refund prior to the filing of the bill. Peak v. Peak, 128 S. W., 981; Haydon v. R. R. Co., 121 S. W., 17.

On reimbursing expenditures. 28 Am. & Eng. Ency. of Law, 1029; 2 Pom. Eq., sec. 1085; Storer v. Lane, 1 Texas Civ. App., 250, 20 S. W., 852; Nueces Valley v. Davis, 116 S. W., 637.

The right to reimbursement not having been pleaded by plaintiffs in error is not, as we take it, a question for consideration here. Certainly not, as to the expenditures made subsequent to the open repudiation by the attorney of the relations with his client, Strange, the defendant in error. Fleming v. Ball, 25 Texas Civ. App., 209, 60 S. W., 985; Lippincott v. Taylor, 135 S. W., 1070; Nueces Valley v. Davis, 116 S. W., 137.

On limitation. Stanley v. Schwalby, 85 Texas, 354; Davis v. Davis, 20 Texas Civ. App., 310, 49 S. W., 726; Jones v. Thompson, 138 S. W., 623; Phoenix Lumber Co. v. Houston Water Co., 94 Texas, 454; Lee

v. Boutwell, 44 Texas, 151; Mixon v. Miles, 46 S. W., 105, 92 Texas, 318; Storer v. Lane, 1 Texas Civ. App., 250, 20 S. W., 852.

MR. JUSTICE YANTIS delivered the opinion of the court.

This suit was instituted in the District Court of Dallas County by H. B. Strange, by petition in trespass to try title, against the Home Investment Company, a corporation, and W. B. Kendall and his wife, Emma G. Kendall, to recover the title to seven lots situated in Dallas County, Texas, being lots 12, 13, 14, 15, 16, 17 and 18 of Huffman subdivision of lots 1 and 4 of block A, Bowser & Lemon's addition to the City of Dallas. The original petition was filed February 9, 1907. On June 29, 1908, an amended petition was filed by Strange, making W. J. Moroney a party defendant in the suit. Moroney is a lawyer, and was president of the Home Investment Company. In this amended petition it was alleged by Strange that on or about January 1, 1906, he was the just and rightful owner, and entitled to the possession of the lands sued for in the original petition; and that on or about said date he employed W. J. Moroney, who was a practicing attorney, and engaged his services to perfect his, Strange's, title to said lands, and to clear up and acquire for his benefit any outstanding titles which the judgment of said Moroney deemed necessary or proper to be acquired or cleared up; but that instead of said Moroney representing his interests, as he was employed to do, he, in truth and in fact, undertook to clear the title in such manner as to acquire the title of said land for the benefit either of himself or the defendant corporation, the Home Investment Company, by acquiring the outstanding titles to said lands, and by placing the title thereto in the name of the Home Investment Company, of which Moroney was president. By this amendment the same relief was prayed for as was sought in the original petition by him, that is, that he have judgment for the title and possession of said lands for rents thereon, and for general, special and equitable relief.

On March 19, 1909, Strange, the plaintiff in the District Court, filed his fourth amended petition, and while still maintaining his right to recover the lots described in the original petition in the form of trespass to try title, he asked also to be permitted to recover in trespass to try title against the said defendants the title and possession of eleven other lots, being numbered 1 to 11, inclusive, which were also located in the Huffman subdivision of lots 1 and 4, block A, Bowser & Lemon's addition to the City of Dallas. By this amendment he alleged that with reference to these lots also the defendant, Moroney, was employed by him to perfect their titles in him, Strange, and to secure any outstanding titles in his favor; and that Moroney secured the outstanding titles for his own benefit, or for the benefit of the Home Investment Company; and that as to all of the lots sued for in this amended petition the Home Investment Company had notice, when the title was placed in its name, of the obligation of Moroney to clear the

titles for the plaintiff, Strange, and of Moroney's fraud in placing the title in fact in the name of the Home Investment Company.

By his fifth amended petition Strange sued in trespass to try title for all of the lots mentioned in the fourth amended petition, and further alleged that since January 1, 1906, the defendants, W. J. Moroney and Home Investment Company, have at all times held and possessed said lots in trust for the use and benefit of the plaintiff, Strange, and that if it should appear on the trial that either or both of said defendants have disposed of said lands, or any portion of the same, then the plaintiff, Strange, would elect upon the trial as to each of said lots whether he should have judgment for the specific lot or its value, and he alleged the value of each of said lots to be one thousand dollars, and rapidly enhancing. He also alleged in his petition that neither of said defendants is in position to ask for restoration or reimbursement by him of any sums expended by either of them in attempting to gather in or acquire such titles, but that if plaintiff should be in error in this position, and it should be ascertained on the trial that the said Moroney, or the investment company, had actually expended any sum or sums of money in attempting to acquire said titles, and that in law or in equity it was incumbent upon the plaintiff, Strange, to refund or repay them, or either of them, such sums so expended, then the plaintiff, Strange, offers to repay such sums, and requests that the court, as a condition precedent to a recovery by him, require in the order or decree to be entered a reimbursement of such sums by him to said defendants.

By answer, the defendant, Home Investment Company, disclaimed any right, title or interest in lots 1, 2, 9, 10 and 11; it pleaded the statute of limitations of two years as a defense to the cause of action sued on.

The defendant, W. J. Moroney, filed a separate answer in which he disclaimed any right, title or interest in any of the property in controversy, and he expressly disclaimed in favor of his co-defendant, the Home Investment Company. He also pleaded the two years statute of limitations against a personal judgment being rendered against him, alleging that if Strange had any cause of action against him it accrued more than two years prior to the institution of suit thereon.

Kendall and wife disclaimed as to any of the lots except lots 17 and 18, of which two lots they claimed to be the legal owners.

The case was submitted to a jury on special issues. The questions by the court, and the answers thereto by the jury, are as follows:

"1. Did the defendant, Moroney, agree or undertake to represent the plaintiff as attorney, and to endeavor to clear or acquire for plaintiff title to the land in controversy?

Answer: Yes.

2. Did the defendant, Moroney, for himself or Home Investment Company (and which), pay out, in connection with said lands, any money with the object and purpose upon his part of benefiting the plaintiff, wholly or partially, and not with the sole object and purpose

of benefiting himself or Home Investment Company? If he did so, then state the amount. If not, simply say so by the answer, 'No.' In answering this question, consider only such expenditures, if any, as were shown by the evidence to have been reasonably necessary and reasonable in amount.

No.

3. What is the reasonable market value now of lots 3 to 8, inclusive, and lots 12 to 18, inclusive, involved? State separately the present value of each lot.

Answer:

Lot   3—$1100.00.
Lot   4—$1100.00.
Lot   5—$1100.00.
Lot   6—$1100.00.
Lot   7—$1100.00.
Lot   8—$1100.00.
Lot 12—$ 800.00.
Lot 13—$ 400.00.
Lot 14—$ 400.00.
Lot 15—$ 400.00.
Lot 16—$ 400.00.
Lot 17—$1000.00.
Lot 18—$1000.00."

Upon these findings by the jury the trial court entered judgment in favor of the plaintiff, Strange, for lots 1 to 18, inclusive, conditioned, however, as to the recovery of lots 17 and 18 upon the plaintiff paying into the registry of the court for Kendall and wife the sum of $438.05, together with six per cent interest, failing in which the title to said lots 17 and 18 to be and remain in said defendant, Emma G. Kendall; and further, the trial court awarded a personal judgment in favor of Strange, and against Moroney and the Home Investment Company in the sum of $6600, with interest, being the value of lots 3 to 8, inclusive.

Appeal was taken by Moroney and the Home Investment Company to the Court of Civil Appeals. The case was decided by the Fourth Court of Civil Appeals at San Antonio, and in said court the judgment of the District Court was affirmed. The case is before us on a petition for writ of error by the Home Investment Company and W. J. Moroney.

It is insisted by the plaintiffs in error that the trial court erred in rendering a personal judgment against them for the value of the six lots which they had sold, for the reason that this claim was barred by the two years statute of limitations. By subdivision 4 of article 5687, Vernon's Sayles' Texas Civil Statutes, it is provided that "actions for debt where the indebtedness is not evidenced by a contract in writing" shall be commenced within two years after the cause of action shall have accrued, and not afterwards. This suit was not an action for debt. It was an action to establish a trust against Moroney and the Home Investment Company upon the legal title held by them in favor of Strange.

The relief sought by the defendant in error was a recovery of the lots themselves; and by the fifth amended petition, filed June 12, 1910, the relief sought was enlarged by the prayer that if the lots in question had been sold by the plaintiffs in error a judgment should be rendered against them for their value in favor of Strange. This amendment did not set up a new cause of action by asking for a personal judgment in case the lots had been sold. This was but a continuation of the same cause of action which was instituted for the establishment of the trust and the recovery of the lots by the fourth amended petition, which was filed March 19, 1909. The prayer in the alternative for a personal judgment was but an enlargement of Strange's remedies, and not a new cause of action. Hence limitation was interrupted on the 19th day of March, 1909, upon the filing of the fourth amended petition, which set up a claim to the lots in question, and for whose sale a personal judgment was allowed, based on the prayer for alternative relief, as contained in the fifth amended petition. If the suit had been one for the recovery of a debt it would have been barred by the two years statute of limitations, since more than two years had elapsed since Moroney repudiated the trust. This repudiation was by letter to Strange dated September 20, 1906. In a suit of this nature limitation begins to run from the date the beneficiary in the trust acquires notice that the trust has been repudiated. But the suit was not for a debt, but was an action to establish a trust, and thereby to recover the land. This remained its nature when the prayer was made in the alternative for a personal judgment, if the lots had been sold. But suit, as indicated, was not for a debt, and the two years statute of limitations would not be available as a defense. If the suit may be regarded as one to recover the land as recoverable in an ordinary trespass to try title suit then the general statutes of limitation applicable to suits for the recovery of real estate would apply. Stafford v. Stafford, 96 Texas, 106, 70 S. W., 75; Bell County v. Felts, 120 S. W., 1065. If the suit is not such, then the four years statute of limitations would apply. McCampbell v. Durst, 15 Texas Civ. App., 522, 40 S. W., 315; East Texas Land & Improvement Co. v. Graham, 24 Texas Civ. App., 521, 60 S. W., 472; Gans v. Marx, 25 Texas Civ. App., 497, 61 S. W., 527; Stroud v. Hawkins, 28 Texas Civ. App., 321, 67 S. W., 534; Craig v. Harless, 33 Texas Civ. App., 257, 76 S. W., 594; Sanborn v. Crowdus Bros. & Co., 99 S. W., 444. The question presented for our consideration does not call for a decision of the question involved in said two lines of decisions. Considered together, or separately, they establish that the two years statute of limitations would not apply in this case, as contended by the plaintiffs in error. The trial court and the Court of Civil Appeals did not err in so holding.

The verdict of the jury established that Moroney agreed and undertook to represent Strange as the latter's attorney, and to endeavor to clear or acquire for Strange the title to the land in controversy. The evidence upon this question was in conflict. It was no doubt sufficient

to sustain the verdict of the jury had they reached the opposite conclusion. But the jury having settled the conflict favorably to the contention of the defendant in error, and there being evidence to sustain this finding, we are bound by it, and must treat the case from that viewpoint. Moroney having acquired the title to the lots in question when there existed between him and Strange the relationship of attorney and client, with a contract between them that he would secure the title to the lots for Strange, he must be regarded in equity as holding the legal title in trust for the latter. The cases announcing this rule are numerous. It is very accurately stated in Johnson v. Outlaw, 56 Miss., 546, where the court said:

"If he [the attorney] purchases for himself, the law regards him as holding the legal title in trust for his client, and not as owner of the property, and any of such clients may claim the property, and, by refunding the money paid out by the attorney, would become entitled to the benefit of the purchase. The law will not stop to inquire into the motives and intentions, nor to calculate whether in fact a profit has been made; but whenever advised that the attorney holds as his own property in relation to which he had been intrusted with guarding the interest of his client, it will compel him to hold as trustee, not as owner."

The verdict of the jury entitled the defendant in error to a judgment for the lots which were unsold, and to a personal judgment for the lots which had been sold, upon his reimbursement of the plaintiffs in error of the amount which the latter had expended as the purchase money. But the judgment as actually rendered in favor of the defendant in error did not require this reimbursement. The judgment should have required this, and should have been made to depend upon such reimbursement as a condition precedent to its enforcement against the plaintiffs in error. This tender of the purchase money was made in the pleading of the defendant in error, and it should have been required. It is immaterial that it was not asked for in the pleadings of the plaintiffs in error. This burden rested upon the defendant in error. It was an essential ingredient of his cause of action for equitable relief. He had applied to a court of equity for the equitable relief of having the court to decree the title to the lots from the plaintiffs in error to him. In asking for such equitable relief he was required to do equity by refunding the money to the plaintiffs in error which they had paid for the title. Strange had no standing in a court of equity without he was thus willing to do equity. This is true even though it be true, as claimed by the attorney for the defendant in error, that when Moroney paid for the title to the lots he entertained the evil and dishonest design to hold the lots for himself, and not for his client. A court of equity would not make Strange a present of the lots because Moroney had intended to defraud him. Such a court would compel the parties to do right, one towards the other, but it would not thus penalize the wrongdoer, or to make of him an outlaw in a court of equity, to the extent of disqualifying him to receive the benefits of a refund required in

equity to be made before according equitable relief to an adversary in the suit. It may. be that if Moroney were himself suing upon his claim to such refund, and asking affirmative relief, he would be held estopped on account of his fraud. But he was not suing for reimbursement, or asking for affirmative relief. The question only arises upon whether or not Strange made a case entitling him to the equitable relief prayed for. We think he could not make a case except by offering himself to do equity by refunding the purchase money. Had the purchase money not been paid by Moroney the title would have remained in his vendor, and would not have reached Strange at all. Strange's title resulted to him, because Moroney, as his attorney, paid the purchase money. Whatever was paid by him as purchase money for the lots should be required to be returned to him. We do not think Moroney's fee for legal services or the expense incurred by him, outside of actual purchase money, comes within the rule requiring a reimbursement of the purchase money. Such expenses would only be recoverable by Moroney in a prayer for affirmative relief, and not recoverable at all if the expenses were incurred by him, as is implied in the findings of the jury, in an effort to defraud his client, and to acquire the titles for himself. The expenses are not involved in the equity proceedings. The title to the lots did not result or move to Strange out of Moroney's vendors by reason of such expenses. The vendor only parted with his title by reason of the payment of the purchase money, and not in virtue of such expenses being incurred. The trust resulted in Strange's favor by virtue of the fiduciary relationship found by the jury to exist, and the payment of the purchase money. This excludes the expenses incurred from equitable consideration, and leaves them to be passed upon as in law and not in equity.

We think the trial court erred in rendering a judgment for Strange, the defendant in error, without requiring a return of the purchase money which was paid for the lots by Moroney, and the Court of Civil Appeals erred in affirming the judgment. We have been asked by the attorney for the defendant in error in his answer to the petition for the writ, not to remand the case for another trial should we take the view that a reimbursement should have been allowed, but to render it, requiring at the same time an allowance of such amount by way of refund as we think should be allowed. We are without legal authority to do this since the amount of the purchase money which was paid by Moroney has not been ascertained by the jury. It is a question of fact for a jury to determine, and we can not invade their province.

No other reversible error is presented. The judgments of the District Court and Court of Civil Appeals, for the error indicated, will be reversed and the cause remanded.

Opinion rendered June 13, 1917.

### ON MOTIONS FOR REHEARING AND TO REFORM AND AFFIRM.

MR. JUSTICE HAWKINS delivered the opinion of the court.

Upon consideration of the motion of plaintiffs in error for a rehearing we adhere to the conclusions announced in our former opinion. Accordingly, said motion will be overruled.

Our former order remanding this cause was based upon the fact that the amounts of purchase money paid out by Moroney or under his directions had not been ascertained by the jury. The motion of defendant in error for a rehearing, and to reform and affirm, avers that all such amounts, and dates of payment thereof, are disclosed by the undisputed evidence of Moroney himself, and makes a tabulation of the various items, giving the largest amounts claimed by Moroney, listing several items of court costs and taxes with the admission that, possibly, they, also, may constitute purchase money, and requests that judgment in favor of Moroney and the Home Investment Company therefor, with interest at six per cent per annum down to the date of the judgment in the trial court, be now here entered. To that request we accede. Clarendon Land Inv. Agency Co. v. McClelland, 86 Texas, 188, 23 S. W., 576, 1100, 22 L. R. A., 105; Wilkin v. Owens, 102 Texas, 197, 132 Am. St., 867, S. W. Rep., 114, p. 104, 115, p. 1174, 117, p. 425. The aggregate of said items, principal and interest, is $1576.27 as calculated by counsel for Strange, but really is $1672.11. Said motion will be granted, and the judgments of the Court of Civil Appeals and the District Court, respectively, will be so reformed as to allow, as of date of the judgment of the District Court—July 1, 1911,—upon the judgment in favor of Strange for $6600 besides interest, a credit of $1672.11; and, as so reformed, said judgments will be affirmed.

Opinion delivered June 28, 1918.

### ON MOTION TO REFORM JUDGMENT.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

Our action on the motion for rehearing in so far as it authorized the rendition of judgment against the surety on the supersedeas bond was erroneous. The judgment as rendered by us in Strange's favor against the defendants, W. J. Moroney and Home Investment Company in our action on the motion was for a materially less amount than the judgment decreed against them in the trial court. With this true it was improper to render any judgment against the surety on the bond. Connor v. City of Paris, 87 Texas, 32. The judgment as reformed and rendered on the motion for rehearing will accordingly be revised so as to omit the judgment against the surety on the bond, and in other respects will stand unaltered.

Under the motion to reform the judgment complaint is made by the defendant W. J. Moroney of the court's failure to hold that the following special issue requested by him upon the trial should have been submitted:

"Did W. J. Moroney at any time before the institution of this suit offer to convey to Strange and Huffman the interest or claims that had

been conveyed to the Home Investment Company upon the repayment of all disbursements that had been made?"

We have heretofore ruled upon the motion for rehearing filed in behalf of the Home Investment Company and defendant W. J. Moroney. That disposed of this ground of complaint. The motion filed by the surety upon the supersedeas bond for a reformation of the judgment does not afford to the defendant Moroney the privilege of filing a second motion for rehearing, even if the filing of such a motion were otherwise permissible. However this may be, it is perhaps proper that we state our views upon this requested special issue.

There was testimony by the defendant Moroney substantially to the effect indicated by the special issue. In justice to him this should be said. The special issue, however, presented a wholly immaterial question—one which was in nowise determinative of Strange's right to recover. If the property to which title was taken in the name of the Home Investment Company was impressed with a trust in Strange's favor, as the jury found it was, Strange's right to recover the title and to have the investment company and Moroney account for so much of the property as has been sold, could not be defeated by a mere prior offer on Moroney's part to convey the property, not to Strange, but to Strange and another. Furthermore, a conveyance by Moroney, with the title in the Home Investment Company, would have been ineffectual. If it was meant that Moroney would have the company make the conveyance, the issue was not so framed. Nor was Strange's right dependent upon his payment of *all* disbursements that had been made by Moroney. We expressly held on the original hearing that since under the finding of the jury the title to the property was wrongfully put in the name of the investment company, it was not incumbent upon Strange to account to Moroney for any expenses he had incurred in that connection, but only for such amounts as constituted the purchase money for the title. There can be no question as to the correctness of that holding, and we adhere to it.

Opinion delivered December 21, 1918.

*Reformed and affirmed.*