## WINDHAM et al. v. CITIZENS NAT. BANK.

### No. 8416.

Court of Civil Appeals of Texas. Austin.

March 24, 1937.

Rehearing Denied April 21, 1937.

Callaway & Callaway, of Brownwood, for appellants.

McCartney, McCartney & Muse, of Brownwood, for appellee.

BLAIR, Justice.

Appellee, the Citizens National Bank, sued appellant Sam Windham on his note for $3,000, dated December 27, 1933, and to foreclose an alleged deed of trust lien on certain land given to secure the payment of the note. Appellant Essie Windham was made party defendant as guardian of the estate of Mary Ann Windham, alleging that she was claiming some interest in the land which was inferior to the lien of appellee bank. The Brownwood Water Improvement District was also made party defendant upon a similar allegation. The judgment disposed of all issues between all parties, but the only part of it involved on this appeal is that decreeing the deed of trust lien of appellee bank superior to the deed of trust lien held by appellant Essie Windham, as guardian.

By guardian's deed, dated September 10, 1929, Essie Windham, guardian of the estate of her minor daughter, Mary Ann Windham, conveyed to Sam Windham 380 acres of land. The report of the sale, the order confirming it, and the guardian's deed each recited that the land was sold for a consideration of $3,100 cash, and a vendor's lien note for $4,500, due in five years. In fact, no cash consideration was paid, the agreement between Sam Windham and the guardian being that he as purchaser would secure a loan from the Federal Land Bank for as much as he could get on the $4,500 note, which amount was to be paid to the guardian, and that the purchaser would then execute a note to the guardian, secured by deed of trust on the 380 acres of land, for the balance of the consideration of $7,600. This agreement was carried into effect. Sam Windham secured a loan from the Federal Land Bank for $4,000, of which $200 was paid for stock in said land bank, and $3,800 in cash was paid to the guardian, who transferred the $4,500 vendor's lien note to the Federal Land Bank. When this transaction was consummated, Sam Windham then executed his note to the guardian for $3,600, dated October ——, 1929, payable October, 1931, which he secured by a deed of trust, dated December 12, 1929, but not recorded until November 12, 1931, covering the 380 acres of land, and reciting that it was inferior to the lien held by the Federal Land Bank. Thereafter by deed dated September 11, 1930, but not recorded until January 20, 1931, Sam Windham and his wife conveyed to the Brown County Water Improvement District a permanent easement to 184 acres of land in the controversy, for the purpose of constructing a lake thereon, the consideration being $5,000, of which amount $4,096.17 was paid to the Federal Land Bank, discharging in full its debt and lien against the property, and $903.83 was applied to the payment of debts due by Sam Windham to appellee Citizens National Bank. The check from the Water Board was issued September 8, 1930, but the transaction between the Federal Land Bank, Sam Windham, and appellee Citizens National Bank in connection therewith was not consummated until January 5, 1931, at which time the Federal Land Bank was paid in full the amount of its debt, as above stated. Sam Windham owed appellee bank a note for $1,000, with interest, and other items, and being desirous of obtaining an additional loan from appellee bank verbally agreed to pay the $1,000 indebtedness due the bank out of the money he was expecting to get from the Water District, and that it should stand as collateral for the loan; however, no assignment or order of any kind was made of the funds. Instead of paying appellee bank the $1,000 promised to be paid, it was agreed that appellee would make a new loan for $3,000; and it was further agreed between appellee bank and Sam Windham that they would have the Federal Land Bank transfer its lien securing the original $4,000 indebtedness to appellee bank, and that same would be regarded as security for the $3,000 which appellee bank was lending Sam Windham, and that the lien was thus to be kept alive as security for the entire $3,000 indebtedness, which was represented by a note executed January 10, 1931, and out of which the $1,000 note and other indebtedness of Sam Windham to appellee bank were paid. It was further understood at the time that upon demand Sam Windham would execute to appellee bank a new deed of trust to take care of the $3,000 indebtedness, if and when the bank demanded, and that it was to represent the original lien transferred to appellee bank by the Federal Land Bank under the agreement above mentioned. The note was renewed from time to time, the last renewal being

December, 1933, at which time the bank called upon Sam Windham for a new deed of trust, and he executed it in keeping with his original promise and agreement to do so. This suit is to recover the amount due on said note and to foreclose the deed of trust lien. The deed of trust executed by Sam Windham on October 12, 1929, to Essie Windham, as guardian of the estate of her minor daughter, to secure the $3,600 note given as a part of the purchase price of the land, was not recorded until November 12, 1931; but on the trial of the case it was alleged and testimony offered showing that the bank knew of the lien at the time it had the Federal Land Bank lien transferred to it and at the time of all transactions with Sam Windham concerning the $3,000 loan and deed of trust lien involved in this suit; and as concerns this appeal, the sole issue submitted to the jury was whether the bank had actual notice of the note and deed of trust executed by Sam Windham to Essie Windham as guardian. The jury answered the question in the affirmative, but notwithstanding this answer, on motion of the bank, the trial court rendered judgment for the bank apparently upon two theories, which constitute the questions in this appeal, as follows:

1. Whether by virtue of the agreement between the appellee bank, Sam Windham, and the Federal Land Bank the rights and liens acquired by the latter passed to the appellee bank as security for the indebtedness owing by Sam Windham to it, not only as to then existing debts, but also as represented by the $3000 note of Sam Windham?

2. Whether the deed by Essie Windham as guardian of the estate of Mary Ann Windham and the deed of trust securing the $3,600 purchase-money note, made in violation of the report of sale and order confirming it, were void and subject to collateral attack in this proceeding?

 No rights of subrogation to the original $4,000 lien of the Federal Land Bank passed by virtue of the promise of Sam Windham to pay the $1000 note and any other loans out of the $5,000 fund paid by the Water Board for its easement, because something more was necessary under the rule announced in Koenig v. Rio Bravo Oil Co. (Tex.Com.App.) 24 S.W.(2d) 14, 16, as follows: "But a mere agreement to pay out of such fund is. not sufficient. Something more is necessary. There must be an appropriation of the fund pro tanto, either by giving an order or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor."

 Nor did appellee bank obtain any rights of subrogation to the original $4,000 lien of the Federal Land Bank, by virtue of the agreement between the appellee bank and Sam Windham that such lien would be kept alive to secure not only then existing debts, but also the $3,000 note of Sam Windham to appellee bank. The undisputed evidence showed that $4,096.17 of the $5,000 paid by the Water Board for its easement on the land covered by the lien was paid to the Federal Land Bank in full payment and satisfaction of its debt and lien. The rule is settled that "a lien, in itself, is neither property nor a debt, but a right to have satisfaction out of property, to secure the payment of the debt, and therefore is not subject to assignment or sale without the debt." 4 Am.Jur. 246, § 21. Or, as is stated in 5 Tex.Jur. 45, § 35, "an assignment of the interest of a mortgage however, without an assignment of the debt is considered without meaning or use." Such has been the rule in this state since the earliest decisions. Perkins v. Sterne, 23 Tex. 561, 76 Am.Dec. 72; Duty v. Graham, 12 Tex. 427, 62 Am.Dec. 534. And in Wood v. Sparks (Tex.Com. App.) 59 S.W.(2d) 361, it is held that the transfer of a lien does not carry the debt with it; but the transfer of the debt will carry the lien with it. The Federal Land Bank's debt secured by the lien transferred had been paid in full by Sam Windham out of the funds derived from the sale of a part of the property securing the debt. Said bank therefore had no debt to transfer, and in consequence could not transfer the lien which had been extinguished by the payment of the debt.

 Appellee bank further contends, however, that the verbal agreement as between itself and Sam Windham to have the lien transferred was sufficient to keep it alive to secure the $3,000 note in suit; and that if the verbal agreement was within the statutes of fraud when originally made, the new deed of trust later executed pursuant to the verbal agreement was not so, and the lien related back to the time of the verbal agreement to execute it. But even so, the lien thus created would be effective only from its date, or the date of the verbal agreement, and the law of notice would control in determining the priority of the

unrecorded deed of trust lien securing the $3,600 note given to the guardian as a part of the purchase price of the land in controversy. The jury found upon sufficient testimony that appellee bank had notice of the unrecorded deed of trust lien of the guardian at the time of the attempted transfer of the lien of the Federal Land Bank, and, of course, had such notice at the time all transactions and agreements to keep alive and to give a new deed of trust to secure the $3,000 loan were made between appellee bank and Sam Windham. Under such facts the question of the priority is controlled by the general rule that different liens upon the same property have priority according to the time of their creation; that is to say, "first in time is first in right." Trail v. Maphis & Day (Tex.Civ.App.) 25 S.W.(2d) 627. Nor will equity postpone a prior, in point of time, unrecorded deed of trust lien to a subsequent deed of trust lien on the same property, where the subsequent lienholder had actual notice of the prior unrecorded deed of trust lien.

▮ Nor do we sustain the contention that the proceedings for sale of the real estate in suit by the guardian were void, because the guardian accepted the note for $3,600, secured by a second lien on the land sold, in lieu of the $3,100 in cash as recited in the report of sale, the order confirming it, and the guardian's deed. This is but a collateral attack on the probate proceedings and the deed, all of which are regular on their face. The rule is settled that an agreement between the guardian and the purchaser containing terms of sale other than those authorized by the court are not void, but merely voidable, and cannot be set aside except on direct attack. Robertson v. Johnson, 57 Tex. 62; Judson v. Sierra, 22 Tex. 365; and Stroud v. Hawkins, 28 Tex.Civ.App. 321, 67 S.W. 534, error refused, wherein it appeared that the guardian accepted other property in lieu of cash. He charged himself with the amount for which the property was sold. He reported to the court that he had received the consideration for the land. The court confirmed the sale. It was held that, until set aside by a direct proceedings, the confirmation conclusively settled all questions properly before the court. And even on direct attack, such a sale will not be set aside unless it appears that injury has resulted to the ward. Bishop v. Greek (Tex.Civ.App.) 199 S.W. 367, error refused. No injury will result to the ward

by enforcing the sale made in the instant case, but on the contrary the ward will lose about one-half the agreed consideration for her land unless the same and the lien securing a part of the purchase price are upheld.

In accordance with our above conclusions, the judgment decreeing and foreclosing the deed of trust lien of appellee bank as the first and superior lien on the land in controversy is reversed, and judgment is here rendered decreeing and foreclosing the deed of trust lien of appellant Essie Windham, as guardian, as the first and superior lien on the land; and in all other respects and as to all issues and parties the judgment of the trial court is affirmed.

Reversed and rendered in part, and in part affirmed.

BAUGH, J., did not sit.