CONOCO, INC., Appellant,

v.

AMARILLO NATIONAL BANK, Appellee.

No. 07–96–0036–CV.

Court of Appeals of Texas,
Amarillo.

Aug. 26, 1997.

Rehearing Overruled Sept. 29, 1997.

Gibson, Ochsner & Adkins, L.L.P., Michael G. Smith, Amarillo, for appellant.

Mullin, Hoard & Brown, L.L.P., Steven L. Hoard and Jeanette Ahlenius, Amarillo, for appellee.

Before BOYD, C.J. and DODSON and QUINN, JJ.

DODSON, Justice.

Amarillo National Bank (the Bank) sued Conoco Incorporated (Conoco) for conversion of accounts receivable in the form of credit card proceeds generated by Centergas Incorporated (Centergas). Conoco denied the conversion claim and asserted affirmative defenses of set-off, consent, waiver and statute of limitations. Both parties moved for summary judgment. The trial court denied Conoco's motion and granted the Bank's motion except as to the issues of limitations and discovery. These issues were tried to a jury. Conoco moved for an instructed verdict, which was denied by the trial court. The jury returned a verdict for the Bank. Conoco appeals the trial court's rulings. Concluding, among other things, that the Bank failed to conclusively negate an essential element of each of Conoco's consent and waiver defenses, we reverse and remand.

Centergas, a wholesaler and retailer of petroleum products, was a debtor and customer of the Bank. Beginning in June of 1983, the Bank took various security interests in Centergas's inventory and accounts receivable, which were duly perfected and continued. In April of 1990, Centergas entered into a Jobber Franchise Agreement with Conoco regarding the purchase and resale of Conoco's products. This Jobber Agreement granted Conoco the right to set-off any credit card sales generated by Centergas through its retail outlets against amounts owed by Centergas to Conoco for the purchase of inventory. When these amounts did not fully satisfy the amount owed by Centergas, Conoco would draft on Centergas's account at the Bank to make up the difference. These drafts were authorized according to the terms of a Preauthorized Payment Agreement between Centergas, the Bank and Conoco.

Centergas experienced substantial losses from its retail locations. In September of 1991, Centergas defaulted on $2,000,000.00 worth of notes held by the Bank. The Bank then extended the notes to November of 1991. Centergas again defaulted on its obligations to the Bank in December of 1991. The Bank then charged off $500,000.00 of Centergas overdrafts.

Despite these defaults, the Bank allowed Centergas to continue to operate its business. Nevertheless, in January of 1992, the Bank turned down several drafts drawn by Conoco on the Centergas account totaling $293,-136.04. Thereafter, Conoco required Centergas to pay cash for new purchases and continued to set-off credit card sales against the balance of Centergas's account with Conoco.

On May 20, 1994, the Bank filed suit against Conoco. The Bank alleged that from late 1991 to February 20, 1992, Conoco converted the Bank's collateral by its set-offs of Centergas credit card sales against the balance of Centergas's account with Conoco. In response, Conoco asserted defenses of waiver, consent and statute of limitations. The Bank then asserted the discovery rule in response to Conoco's limitations defense. Both parties moved for summary judgment. In its motion for summary judgment, the Bank did not challenge Conoco's defenses of consent and waiver. The trial court denied Conoco's motion, rendered partial summary judgment on behalf of the Bank, and submitted the discovery rule issue to the jury, which returned a verdict for the Bank.

Conoco asserts six points of error. First, Conoco asserts that the trial court erred in granting the Bank's motion for summary judgment because: 1) as a matter of law, Conoco did not convert the Bank's collateral and Conoco had a right of set-off which was superior to the Bank's perfected security interest; 2) Conoco established the defenses of consent and waiver as a matter of law; and 3) as a matter of law, the Bank's claim was barred by the statute of limitations, which

could not be avoided by the discovery rule. Second, and in the alternative, Conoco asserts that the trial court erred in granting the Bank's motion for summary judgment because fact issues exist regarding the conversion and set-off issues and Conoco's affirmative defenses of consent and waiver. Third, Conoco asserts that the trial court erred in overruling its motion for instructed verdict on the limitation and discovery rule issue.

Fourth, Conoco asserts that the trial court erred in refusing to submit the discovery rule issue to the jury in terms of "could have discovered," rather than "should have discovered." Fifth, Conoco asserts that the trial court erred in permitting the Bank's trial amendment which changed the Bank's live pleading from "could" have discovered to "should" have discovered. Sixth, Conoco asserts that the trial court erred in permitting the Bank's counsel to advise the jury that the court had previously ruled that Conoco's acts of set-off constituted conversion of the Bank's collateral.

We consider the first two points of error within the framework of established principles of summary judgment law. When, as here, both parties to a lawsuit move for summary judgment and the trial court grants one of the motions and denies the other, we consider all the issues presented and may reverse the judgment of the trial court and render such judgment as the trial court should have rendered. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Fort Bend Cent. Appraisal Dist. v. Hines Wholesale Nurseries*, 844 S.W.2d 857, 859 (Tex.App.—Texarkana 1992, writ denied).

To obtain summary judgment in its favor, the movant must conclusively establish, by competent summary judgment evidence, every element of its cause of action or its affirmative defense, or conclusively negate at least one of the essential elements of the opposing party's cause of action or affirmative defense, as a matter of law. *See, Thompson v. Chrysler First Business Credit Corp.*, 840 S.W.2d 25, 28 (Tex.App.—Dallas 1992, no writ); *Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443, 445 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.); *Lear Siegler, Inc. v. Perez*,

819 S.W.2d 470, 471 (Tex.1991). Each party must carry its own burden, and neither can prevail due to the other's failure to meet its own burden. *Farmers Texas County Mut. Ins. Co. v. Griffin*, 868 S.W.2d 861, 863 (Tex. App.—Dallas 1993, writ denied) (citing *Cove Invs., Inc. v. Manges*, 602 S.W.2d 512, 514 (Tex.1980)).

### *Consent and Waiver*

In the second subpart of Conoco's first point of error, Conoco asserts that the trial court erred in denying its motion for summary judgment because its affirmative defenses of consent and waiver were established as a matter of law. We disagree with this assertion. Nevertheless, we agree with Conoco's alternative assertion in their second point of error that the trial court erred in rendering summary judgment for the Bank on Conoco's defenses of consent and waiver, because the Bank did not assert the negation of these defenses as grounds for summary judgment.

■ Conoco amended its answer on September 29, 1994, in which it added the affirmative defense of waiver to the already pleaded defense of consent. The Bank, in its amended motion for summary judgment filed on September 23, 1994, did not assert as grounds for summary judgment that it conclusively negated Conoco's pleaded affirmative defense of consent, and did not further amend its motion after the Bank amended its answer to address either the defense of consent or waiver.

It is reversible error to grant a motion for summary judgment on a cause of action or affirmative defense not addressed in the motion for summary judgment. *Smith v. Atlantic Richfield Co.*, 927 S.W.2d 85, 88 (Tex. App.—Houston [1st Dist.] 1996, writ denied). Accordingly, we conclude that the trial court erred in rendering summary judgment for the Bank on the consent and waiver issues, and sustain Conoco's second point of error as it applies to consent and waiver.

■ We now turn to Conoco's assertion that it established consent and waiver as a matter of law. Conoco asserts that the Bank, by its actions or lack thereof, implicitly

consented to the set-offs of the collateral and implicitly waived its lien. Although Conoco pleaded consent and waiver as separate defenses, our research reveals that, where one party has a secured claim in property, Texas courts have historically concluded that consent to the disposition of collateral results in waiver of a secured interest in the collateral, thereby treating consent and waiver as a "cause and effect" defense. "A mortgage lien may be waived by either express, implied, or conditional consent." *Daggett v. Corn,* 54 S.W.2d 1098, 1099 (Tex.Civ.App.— Amarillo 1932, no writ).

■ Accordingly, the well established rule in Texas may be stated as follows: if a transfer of collateral is consented to by a party holding a secured claim in the collateral, the secured party waives his security interest, the transferee takes free and clear of such interest, and the secured party may neither foreclose nor bring an action for conversion. *Sechrist–Hall Co. v. Harlingen National Bank,* 368 S.W.2d 155, 159 (Tex.Civ.App.—Austin 1963, writ ref'd n.r.e.); *Cartwright v. Flatt,* 244 S.W.2d 523, 525 (Tex.Civ.App.—Waco 1951, no writ); *Oats v. Dublin National Bank,* 127 Tex. 2, 90 S.W.2d 824, 827 (1936); *Lumberman's National Bank v. Bush & Witherspoon Co.,* 247 S.W. 295, 299 (Tex.Civ.App.—Galveston 1922, writ ref'd); *Rusk County Lumber Co. v. Meyer,* 126 S.W. 317, 319 (Tex.Civ.App.1910, writ dism'd); *see,* Tex. Bus. & Com.Code Ann. § 9.306(b) (Vernon 1991).

■ Waiver occurs when a person, who has full knowledge of the material facts, acts or fails to act upon a right which he legally holds, and such act or failure to act is inconsistent with that right or the intention to rely upon that right. *Ford v. Culbertson,* 158 Tex. 124, 308 S.W.2d 855, 865 (1958). To establish that a secured party consented to a transfer of collateral and thereby waived his secured claim by implication, "there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an *estoppel* on his part." (emphasis added). *Nixon Construction Co. v. Downs,* 441 S.W.2d 284, 286 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ). "Waiver, of course, is a matter or question of inten-

tion." *Ford v. Culbertson,* 308 S.W.2d at 865.

Conoco asserts that the Bank implicitly consented to Centergas transferring the collateral to Conoco and thereby implicitly waived its security interest in the accounts receivable by allowing Centergas to continue to conduct business after it defaulted in its obligations to the Bank, and by failing to exercise its rights to inquiry, notice, and demand, or to take possession of the collateral and liquidate it. The Bank asserts that, although it did allow Centergas to continue in the normal course of its business after default, it did not intend for Centergas to transfer its collateral to Conoco without obtaining value in return for that collateral.

■ When deciding whether a genuine issue of material fact exists to preclude a summary judgment, we take evidence favorable to the non-movant as true and indulge every reasonable inference and resolve every doubt in favor of the non-movant. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In that connection, the evidence of the Bank's failure to act upon its rights raises an inference that it consented to the set-offs and therefore waived its security interest. The conflicting evidence of the Bank's intent to only allow set-offs where Centergas was obtaining new value in return also raises an inference that it did not intend to waive its security interest. Where waiver is a matter of inference, it is a question of fact for the jury. *Ford v. Culbertson,* 308 S.W.2d at 865.

Even though the conflicting summary judgment evidence is sufficient to support the submission of fact questions on the consent and waiver issues, we conclude that the evidence fails to conclusively establish that the Bank consented to the set-offs and thereby waived its security interest. Accordingly, we further conclude that genuine issues of material facts exist as to these issues. Consequently, we overrule the second subpart of Conoco's first point of error.

### Conversion

By the first subpart of Conoco's first point of error, Conoco asserts that the trial court

erred in granting the Bank's motion for summary judgment and denying its motion for summary judgment because, as a matter of law: 1) Conoco did not convert the Bank's collateral, and 2) Conoco's contractual right of set-off is superior to the Bank's perfected security interest. By their second point of error, and in the alternative, Conoco asserts that a genuine issue of material fact exists as to the conversion and set-off issues. In connection with these points of error, Conoco asserts that it did not convert the Bank's collateral as a matter of law because it merely exercised its lawful right of set-off given to it through its contract with Centergas. We disagree with this contention because, as we will discuss below, even though Conoco was exercising a lawful right conferred upon it by the contract between it and Centergas, it did so in unlawful contravention of the Bank's superior claims and rights in the collateral.

■ Conversion is the unlawful taking of control or dominion over another person's personal property in denial of that person's right in the property. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex.1971). If a transfer of collateral encumbered by a security interest takes place without the secured party's consent, the transferee takes the collateral subject to the security interest and the secured party may bring an action for conversion. *See,* Tex. Bus. & Com.Code Ann. § 9.306(b) Official Comment 3 (Vernon 1991); *see also, Montgomery v. Fuquay–Mouser, Inc.,* 567 S.W.2d at 270. There is no dispute that the Bank had a secured claim in Centergas's accounts receivable. There is also no dispute that Conoco set-off Centergas's debt against these accounts receivable. Based on this, and, assuming *arguendo* that the Bank did not consent to the set-offs of the accounts receivable by Conoco, we conclude that Conoco converted the Bank's property as a matter of law.

Nonetheless, Conoco asserts that its contractual right of set-off is superior to the Bank's security interest in the collateral, *and therefore is not subject to the Bank's* security interest. In this connection, Conoco contends that this case is not one of lien priorities, but one of the Bank's collateral assignment versus Concoco's contractual

right of set-off, and therefore is governed by the law of contracts and assignments. Conoco further contends that under the governing law, the Bank's collateral assignment is subject to Conoco's contractual right, and accordingly Conoco could not have converted the Bank's collateral as a matter of law. We disagree.

We agree that this case is not one of lien priorities. We disagree, however, with the assertion that this is a case of a collateral assignment versus a contractual right. This case is one of competing claims in property, one which is a secured claim in the property created by a properly filed, perfected, and continued security interest; the other which is an unsecured claim in the property created by a contractually conferred right of set-off. When a question of the superiority of competing claims to property such as these arises, the established common law rule of "first-intime, first-in-right" applies to determine the question.

According to the first-in-time, first-in-right rule, the superiority of different claims on the same property is determined according to the order in time that the competing claims are created. *Windham v. Citizens National Bank,* 105 S.W.2d 348, 351 (Tex. Civ.App.—Austin 1937, writ dism'd); *Trail v. Maphis & Day,* 25 S.W.2d 627, 628 (Tex.Civ. App.—Austin 1930, no writ); *Church v. Western Finance Corp.,* 22 S.W.2d 1074, 1075 (Tex.Civ.App.—San Antonio 1929, no writ); *City National Bank of Wichita Falls v. Laughlin,* 210 S.W. 617, 619 (Tex.Civ.App.— Amarillo 1919, no writ). In the present case, the Bank's secured claim was created when it took and properly perfected a security interest in the accounts receivable of Centergas in June of 1983. In April of 1990, Conoco and Centergas entered into the Jobber Agreement, giving Conoco its unsecured right of set-off as to the same property. Consequently, the Bank's secured claim was created prior in time to the creation of Conoco's unsecured right of set-off. Accordingly, under the above-stated rule, the Bank's claims and rights to the property are superior to Conoco's claims and rights in the property, and therefore Conoco's acts of set-off constituted conversion as a matter of law.

Additionally, Conoco asserts that the Bank's claim for conversion is barred by the law of contracts and assignments. We disagree. In support of it's position, Conoco relies on the Restatement of Contracts, § 167, which provides:

(1) An assignee's right against the obligor is subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and to all set-offs and counterclaims of the obligor which would have been available against the obligee had there been no assignment, provided that such defenses and set-offs are based on facts existing at the time of assignment, or are based on facts arising thereafter prior to knowledge of the assignment by the obligor.[1]

Section 167 is not applicable in this instance. Section 167 presupposes an assignment. In this instance, we find no summary judgment evidence showing that Centergas assigned its credit card receipts to the Bank. Likewise, the Bank does not claim against Conoco as an assignee under an assignment. The Bank's only claim is under its duly-perfected security interest. Conoco asserts, but does not establish, that the Bank is an assignee of Centergas's credit card receipts.

Also, Conoco further asserts that § 9.318 of the Texas Business and Commerce Code bars the Bank's claim for conversion. Again, we disagree.

Section 9.318, in pertinent part, provides:

(a) Unless an account debtor has made an enforceable agreement not to assert *defenses or claims arising out of a sale* as provided in Section 9.206 the rights of an assignee are subject to

(1) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

(2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

(emphasis added.) The applicability of this section is predicated on a two-party sale and the assignment of the accounts receivable to a third party. In this instance, there was no sale from Centergas to Conoco, and transfer by assignment of the credit card receipts to the Bank. As we stated above and further reiterate, there simply is no summary judgment evidence evincing an assignment of the credit card receipts by Centergas to the Bank. Nor does the Bank so claim. In this connection, we again point out that the Bank claims under its security interest in the credit card receipts rather than as an assignee under an assignment of the credit card receipts from Centergas. Section 9.318(a) simply does not apply in this instance.

Accordingly, we conclude that the Bank's secured claim was superior to Conoco's unsecured contractual right of set-off, and therefore Conoco's set-off of the Bank's collateral constituted conversion as a matter of law. Consequently, we further conclude that the trial court did not err in rendering summary judgment for the Bank on the conversion and set-off issues and denying Conoco's motion for summary judgment on these issues, and we overrule the first subpart of Conoco's first point of error and Conoco's second point of error as it pertains to the issues of conversion and set-off.

### Limitations and the Discovery Rule

By the third subpart of its first point of error, Conoco asserts that, as a matter of law, the Bank's conversion claim is barred by the two-year statute of limitations, and that the statute of limitations is not avoided by the discovery rule, and therefore the trial court erred in denying Conoco's motion for summary judgment on the limitations issue.

Under § 16.003(a) of the Texas Civil Practice and Remedies Code, an action for conversion must be commenced not later than two years after the day the cause of action accrues. The question as to when a cause of action accrues is a judicial one. *Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex. 1977). Generally, a cause of action accrues when facts come into existence authorizing a claimant to seek judicial remedy. *Id.* There is no dispute that, absent an exception to the applicable statute of limitations in the pres-

---

1. This quotation from the First Restatement of Contracts is taken from Conoco's brief.

ent case, the Bank's conversion action is barred.

■▆▆ The exception relied on by the Bank is the discovery rule, which provides that the accrual of the cause of action is deferred until the claimant knew, or by exercising reasonable diligence, should have known of the facts giving rise to the cause of action. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex.1996). Application of the discovery rule is governed by a two-prong test. *Id.* at 456. First, the injury must be "inherently undiscoverable." *Id.* This prong of the test has been construed by our Supreme Court to mean that the injury must not be ordinarily discoverable, even though due diligence has been used. *Id.* Second, evidence of the injury must be objectively verifiable by physical evidence. *Id.*

■▆▆ We conclude that Conoco failed to conclusively establish as matter of law that the discovery rule is not applicable in this case. In this connection, Conoco first asserts that because this case is grounded solely in a commercial paper context, that the discovery rule does not apply as a matter of law. Conoco relies on the rule espoused by this Court in the case of *Lyco Acquisition 1984 Ltd. Partnership v. First Nat'l Bank of Amarillo,* for its assertion that as a matter of law the discovery rule does not apply in this case.

In *Lyco,* we stated that, "Absent allegations of fraud, the discovery rule does not apply to toll limitations in cases grounded solely in a commercial paper context." *Lyco Acquisition 1984 Ltd. Partnership v. First Nat'l Bank of Amarillo,* 860 S.W.2d 117, 119 (Tex.App.—Amarillo 1993, writ denied) (citing *Cathey v. First City Bank of Aransas Pass,* 758 S.W.2d 818, 822 n. 3 (Tex.App.—Corpus Christi 1988, writ denied)). This statement of the applicability of the discovery rule in commercial paper context is an overly broad statement of the rule as initially stated in the case of *Southwest Bank & Trust Co. v. Bankers Commercial Life Ins. Co.,* 563 S.W.2d 329, 332 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

The Court in *Southwest Bank* expressly concluded that "the 'discovery rule' does not

apply to toll the statute of limitations where a bank is sued for conversion on a forged endorsement." The Court in *Cathey* expanded the rule set out in *Southwest Bank & Trust* without explanation. We further note that the *Cathey* Court expressed this rule in dictum, stating that this point was "not plead or briefed by appellant." Accordingly, we conclude that the rule as espoused in *Southwest Bank & Trust* is the better rule, and we decline to follow the dictum of *Cathey v. First City Bank of Aransas Pass.*

Additionally, we note that the *Lyco* and *Southwest Bank & Trust* cases both dealt with the conversion of negotiable instruments that were undoubtedly commercial paper, *i.e.,* personal checks and cashier's checks. The present case, on the other hand, deals with credit card invoices, which are generally contractual agreements between the credit card company and the cardholder and are non-negotiable. Accordingly, we conclude that the commercial paper exception espoused in *Lyco v. First National Bank* is overly broad, and that the facts of that case are too distinct from the facts of the present case to warrant that case as controlling.

Conoco further contends that the summary judgment evidence conclusively establishes that by the exercise of due diligence and reasonable care, that the Bank should have known that Conoco was setting-off the credit card invoices against the debt owed to it by Centergas, and, therefore, the first element of application of the discovery rule was not met. Conoco points out ways that the Bank could have taken action by which the Bank would have readily ascertained that Conoco was setting-off the credit card invoices against the debt owed to Conoco by Centergas. The evidence in the record also reflects the actions taken by the Bank in monitoring its collateral after Centergas defaulted in its obligations to the Bank, and which did not reveal the set-off actions of Conoco.

Obviously, by one set of actions, the set-offs were readily ascertainable, and by another set of actions the set-offs were not readily ascertainable. In light of this conflicting evidence, the issue then becomes which actions constitute due diligence. Summary judgment should not be granted when the issues

are inherently within the province of the trier of fact, such as the issue of reasonable care. *El Paso Associates, Ltd., v. J.R. Thurman & Co.,* 786 S.W.2d 17, 21 (Tex.App.—El Paso 1990, no writ). "The exercise of reasonable diligence under the discovery rule will generally fall into this category...." *Id.* at 21. Accordingly, we conclude that Conoco failed to conclusively establish that the discovery rule does not apply in the present case, and consequently we overrule the third subpart of Conoco's first point of error.

In its third point of error, Conoco asserts that the trial court erred in overruling its motion for instructed verdict on the discovery rule issue. An instructed verdict is proper when no issue of fact is presented by the evidence, or where no verdict other than the one requested could properly be sustained. *Hyman Farm Service, Inc. v. Earth Oil & Gas Co.,* 920 S.W.2d 452, 455 (Tex. App.—Amarillo 1996, no writ) (citing *Szczepanik v. First Southern Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994) (per curiam)). If there is any conflicting evidence of probative value on the matter in question, an instructed verdict is improper and the issue in question must be determined by the trier of fact. *Szczepanik v. First Southern Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994) (per curiam). In essence, if there is more than a scintilla of supporting evidence, then the issue must be submitted to the jury for determination. *Id.*

In this instance, there is more than a scintilla of supporting evidence in the record to support the trial court's denial of Conoco's motion for instructed verdict on the issue of discovery. There was evidence presented at trial showing the Bank's actions with regards to obtaining information about their collateral from Centergas, and that these efforts did not reveal Conoco's set-off of the collateral against the Centergas debt. This provides more than a "scintilla" of evidence upon which a jury could return a verdict in favor of the Bank on the issue of discovery. Consequently, Conoco's third point of error is overruled.

*The Trial Proceedings*

In its fourth, fifth, and sixth points of error, Conoco asserts that the trial court committed reversible error as to various trial proceedings. We address each point in turn below.

In point of error four, Conoco asserts that the trial court erred in refusing to submit Question No. 1 to the jury in the form requested by Conoco. The question, as submitted by the trial court to the jury, reads as follows:

Do you find that Amarillo National Bank did not discover, or by the exercise of reasonable care and diligence *should* not have discovered, before May 20, 1992, that Conoco was offsetting Centergas' credit card receivables beginning in January, 1992?

(emphasis added).

To determine whether an alleged error in the jury charge is reversible, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Island Recreational Dev. Corp. v. Republic of Texas Savings Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). Alleged error will be deemed reversible only if, when viewed in the light of the totality of the circumstances, it amounted to such a denial of the rights of the complaining party that it was reasonably calculated and probably did cause the rendition of an improper judgment. *Id.* at 555.

Conoco contends that the correct discovery rule standard which should have been applied in the trial court was "*could* the Bank have discovered," instead of "*should* the Bank have discovered." By quoting various Texas Supreme Court cases from as far back as 1940 and as recent as the 1996 *Computer Associates* case, 918 S.W.2d at 453, Conoco points out that the Court has not been completely consistent in its use of "could" versus "should" in the discovery rule context. For resolution, we look to the language used by the Court in its most recent declaration of the rule.

In *Computer Associates,* the Court presents the foundation for the rule as follows:

[t]he discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence,

*should* have known of the facts giving rise to the cause of action.

918 S.W.2d at 455 (citing *Trinity River Auth. v. URS Consultants, Inc.-Texas,* 889 S.W.2d 259, 262 (Tex.1994); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990)). Given the Supreme Court's recent reliance on the "should" language of its own precedent, we conclude that the trial court did not err in refusing to allow the submission of Conoco's "Question 1" which employed the word "could." Consequently, Conoco's point of error four is overruled.

■ In point of error number five, Conoco asserts that the trial court erred in permitting the Bank's trial amendment which changed the Bank's live pleading from "could" have discovered to "should" have discovered. When reviewing a trial court's allowance of a trial amendment, we look to whether the trial court abused its discretion. *Bell v. Meeks,* 725 S.W.2d 179, 180 (Tex. 1987); *Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630, 634 (Tex.1986). A court may not refuse a trial amendment unless (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face. *State Bar of Texas v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex.1994). The burden of showing surprise or prejudice rests on the party resisting the amendment. *Id.*

■ We are not persuaded that the trial court committed reversible error by allowing the Bank's trial amendment. The evidence presented by Conoco in support of its position that the Bank "could" have known of the set-offs could easily have been argued to be and been found by the jury to be what the Bank "should" have done to make itself aware of the set-offs. The distinction is not of such magnitude that the trial amendment served to prejudice or even surprise Conoco. Therefore point of error number four is overruled.

■ In point of error six, Conoco asserts that the trial court erred by permitting the Bank's counsel to advise the jury that the trial court had ruled that Conoco's acts of offset constituted conversion of the Bank's collateral. Given that the trial court's partial summary judgment ruling in favor of the Bank clearly included all issues, save the discovery issue, we conclude that the issue of conversion was included in that judgment. Because issues which are disposed of by summary judgment involve no genuine issue of material fact, it was appropriate for the trial court to allow the Bank to present settled facts to the jury which were fundamental to the partial summary judgment. As such, the trial court did not abuse its discretion. Point of error number six is overruled.

In sum, Conoco's points of error one, three, four, five and six are overruled. Point of error two is overruled insofar as it pertains to the issues of conversion and set-off. Nonetheless, point of error two is sustained insofar as it pertains to the issues of consent and waiver. Accordingly, because the trial court erred by granting the Bank's motion for summary judgment on Conoco's consent and waiver defenses, we must reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.