Corbett ALLEN, Appellant,

v.

Thomas W. POWELL and Powell Industries, Inc., Appellees.

No. 07–96–0328–CV

Court of Appeals of Texas, Amarillo.

Jan. 16, 1998.

Rehearing Overruled March 13, 1998.

W. Ted Minick, Linda D. King, Winstead Sechrest & Minick, Houston, for Appellees.

Katherine Butler, Margaret A. Harris, Butler & Harris, Houston, John Fritz Barnett, Barnett & Craddock, Houston, for Appellant.

Before BOYD, C.J., and DODSON and REAVIS, JJ.

CARLTON B. DODSON, Justice.

Corbett Allen (Allen) appeals from a summary judgment granted in favor of Thomas Powell (Powell) and Powell Industries, Inc. (the corporation), in a suit involving wrongful termination and tortious interference with a contract. By two points of error, Allen contends that the trial court erred in 1) granting summary judgment on his claim that he was terminated from his employment because he refused to commit an illegal act; and 2) granting summary judgment on his claim that Powell tortiously interfered with his contract with the corporation. We reverse the trial court's judgment and remand to that court.

The summary judgment evidence shows that in November, 1987, Allen was employed by the corporation as its chief financial officer. Powell was president and chief executive officer of the corporation at that time. The corporation is publicly owned. Soon after Allen's employment, Powell and Allen began to have differences of opinion. Powell believed Allen was trying to undermine his authority with other employees. On January 16, 1989, Powell asked Allen to have the corporation extend a $20,000 loan to Palfram, Inc., a corporation solely owned by Powell. Allen informed Powell that the loan must be approved by the Board of Directors, Powell disagreed and told Allen not to inform the Board. The record is not apparent as to why Allen, eventually, agreed to extend the loan to Powell, except that Powell agreed to sign a promissory note for $20,000.

On February 7, 1989, Powell asked Allen to have the corporation pay for approximate-

ly $3,000 in accounting services provided to Powell, personally. Allen informed Powell that the corporation could not pay for the services without the Board of Directors' approval. Powell advised Allen that in a prior meeting, the Board had adopted a resolution to pay for tax consultant work performed for its top level executives. Allen could not find such a resolution in the corporate minutes. Subsequently, Allen informed Powell that it would be "illegal" for the corporation to pay the invoices. Allen contended that Powell replied, "Don't worry, I'll take care of it." Allen asserted that Powell appeared angry when he made this statement. Later, Powell paid the invoices.

On February 22, 1989, Allen contacted Gary Duke (Duke), audit manager of Touche Ross, a subsidiary of the corporation, and Jesse Milam (Milam), chairman of the audit subcommittee of the corporation's board of directors. He advised them that Powell had requested that the corporation pay his personal accounting bills. Milam advised Allen that he wanted to talk to Powell regarding the matter. Later, on the same day, Allen, Powell and Robert Murphy (Murphy), the corporation's director of human resources, met for the purpose of "ironing out" problems between Powell and Allen. At this meeting, Allen asserted that Powell was treating the corporation as a private company and that he and Powell could not work together.

The board held a special meeting on February 27, 1989, during which Allen presented his grievances against Powell. Allen complained of Powell's ability as chief executive officer, and that Powell had requested Allen to perform an illegal act in his capacity as the corporation's chief financial officer. On February 28, 1989, Powell and Murphy met with Allen and terminated his employment with the corporation. Allen then filed suit against Powell and the corporation for intentional infliction of emotional distress, breach of the duty of good faith and fair dealing, tortious interference with a contract, and wrongful termination. Powell and the corporation moved for summary judgment and on June 5, 1995, a final order was rendered disposing of all of Allen's claims. Allen ap-

peals the court's summary judgment disposing of his claims for tortious interference and wrongful termination.

In his first point of error, Allen contends that the trial court erred in granting summary judgment on his claim for wrongful termination. Powell and the corporation, in their motion for summary judgment, asserted that Allen was not fired for the sole reason that he refused to commit an illegal act, arguing that (1) there were other legitimate reasons for Allen's termination, and that (2) Allen was not requested to perform an illegal act. Allen claims that there are fact issues regarding the reason he was fired and whether the requested act was illegal. We agree.

■■■ The longstanding rule in Texas, regarding the relationship between the employer and employee, is that employment for an indefinite term may be terminated at will and without cause. *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 75, 10 S.W. 99, 102 (1888). However, in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex.1985), the court created a narrow exception to the employment-at-will doctrine, allowing an employee to sue for wrongful termination if fired "for the sole reason that the employee refused to perform an illegal act." *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d at 735.

Under the *Sabine* exception, the essential elements of Allen's wrongful termination action are that 1) he was terminated, and 2) for the sole reason that he refused to commit an unlawful act. For Powell and the corporation, as movants, to prevail on their summary judgment motion, they must conclusively negate an essential element of Allen's cause of action. *Conoco, Inc. v. Amarillo National Bank*, 950 S.W.2d 790, 791 (Tex.App.—Amarillo 1997, no writ); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991).

■■ In this instance, it is undisputed that Allen's employment with the corporation was terminated. Therefore, to prevail on their motion, Powell and the corporation must conclusively establish that Allen's refusal to perform the alleged illegal act was not the sole cause for his termination or that the alleged

illegal act was not unlawful. This they failed to do.

First, we address the purported illegality of this act. The Texas Penal Code, § 31.03 [1], as it existed at the time of Powell's request, provided that a person commits theft if he unlawfully appropriates property with the intent to deprive the owner of property and the appropriation is without the owner's effective consent. In connection, we reiterate that the corporation is publicly owned. Allen asserts that Powell's request that he pay Powell's personal bills from corporate funds amounted to a request that he commit theft because it required an appropriation of corporate property without the corporation's (the owner's) effective consent, absent the board of directors' or its shareholders' express approval. If Allen had complied with Powell's request, then Allen would have committed theft and thereby faced criminal prosecution.

Nevertheless, Powell and the corporation contend that Allen was not requested to perform an illegal act because there was a corporate resolution allowing the corporation to pay for tax consultant work for top level executives. The summary judgment evidence shows that the purported corporate resolution was never found in the corporate minutes. The record further shows that some members of the board were never aware of this policy. We conclude the evidence is sufficient to support an inference that the resolution never existed. In this regard, the summary judgment evidence fails to conclusively establish that the alleged illegal activity was lawful.

■ We next address whether Allen's refusal was the sole reason for his termination. Allen contends that Powell had approached him in the past regarding a personal loan, to which Allen felt uneasy and expressed the need for board approval. Eventually, the loan was made to Powell, but it strained the men's relationship. Later, Powell requested Allen to have the corporation pay his invoices for personal services from an accountant, amounting to approximately $3,000. Allen refused, stating he did not believe he had the authority to pay such bills. Allen testified

that Powell wanted him to find a way to have these bills paid by the corporation. Allen further testified that he advised Powell it would be illegal for him to pay personal bills from corporate funds. According to Allen's testimony, Powell became angry when he (Allen) refused to pay the invoices.

The summary judgment evidence further shows that Allen contacted Duke and Milam concerning Powell's request to have his personal bills paid by the corporation, to obtain their advice regarding the situation. Their reaction was one of concern, which resulted in Milam immediately calling Powell. A board meeting was held a few days later where Allen advised the board of Powell's request and that he believed the act to be illegal. Also, he advised the board that he had refused to act on Powell's request. The next day, Allen was fired.

Powell and the corporation assert that there were other legitimate reasons for Allen's termination, citing the increased animosity between Allen and Powell and Powell's belief that Allen was undermining his authority with other employees. Powell and the corporation also point to Allen's contention that he did not believe he and Powell could work together. They further contend that Powell did not fire Allen, nor threaten to fire him, when he refused to pay the accounting bills. They claim that Allen was never forced to choose between risking criminal liability or being discharged from his livelihood. *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 724 (Tex.1990). We disagree.

It is undisputed that Powell requested Allen to pay a personal accounting bill from corporate funds. Powell's request forced him to choose between performing the act he considered illegal or risking termination. *See, Higginbotham v. Allwaste, Inc.*, 889 S.W.2d 411, 416 (Tex.App.—Houston [14th Dist.] 1994, writ denied). After Allen refused to pay Powell's personal bill as requested, Allen was fired approximately two weeks later. In that regard, we acknowledge that the record shows there were differences of opinion between Allen and Powell, resulting in personality conflicts. Nevertheless,

---

1. Acts 1973, 63rd Leg., p. 833, ch. 399 § 1, eff. Jan. 1, 1974 (amended 1983).

the evidence does no more than raise conflicting claims concerning the reason for termination. Accordingly, we conclude that the summary judgment evidence fails to conclusively establish that Allen was fired for reasons other than he refused to pay the personal accounts of Powell from corporate funds. Consequently, Powell and the corporation have failed to conclusively negate an essential element of Allen's action for wrongful termination. Allen's first point is sustained.

In Allen's second point of error, he contends that the trial court erred in granting summary judgment on his claim that Powell tortiously interfered with his contract with the corporation. We agree.

The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract subject to interference; (2) occurrence of an act of interference that was willful or intentional; (3) the act was a proximate cause of plaintiff's damage; and (4) actual damage or loss occurred. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 926 (Tex.1993). However, "an officer or director [of a corporation] may not be held liable in damages for inducing the corporation to violate a contractual obligation, provided that the officer or director acts in good faith and believes that what he does is for the best interest of the corporation." *Holloway v. Skinner,* 898 S.W.2d 793, 795 (Tex.1995)(citing *Maxey v. Citizens Nat. Bank of Lubbock,* 507 S.W.2d 722, 726 (Tex. 1974)). The court in *Holloway* further cited the general rule that the act of the agent is the act of the corporation. *Holloway v. Skinner,* 898 S.W.2d at 795.

Neither party refutes the existence of a contract between Allen and the corporation, nor do they refute that the act of firing Allen was an intentional act. Rather, Powell and the corporation assert an affirmative defense that Powell was acting as an agent of the corporation when he fired Allen and that he acted in good faith and in the best interest of the corporation.

Because Powell and the corporation moved for summary judgment, they have the burden of conclusively establishing the essential elements of their affirmative defense. *Mont-gomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). In this regard, Powell and the corporation were required to show that (1) Powell acting as an agent of the corporation, (2) acted in good faith and in the best interest of the corporation when he fired Allen. *Holloway v. Skinner,* 898 S.W.2d at 795 (Tex. 1995).

It is undisputed that Powell acted for the corporation when he terminated Allen. Nevertheless, the summary judgment evidence fails to conclusively establish that Powell acted in good faith and in the best interest of the corporation.

Allen claims that summary judgment was inappropriate because he disputed the motives of Powell in terminating his employment with the corporation and, therefore, Powell exceeded his scope of authority. Powell and the corporation claim that Powell was authorized by the corporation to fire Allen. They support this assertion by the fact that the board voted to leave Powell as C.E.O. and gave him specific instructions to terminate Allen. Powell and the corporation rely on portions of deposition testimony from various members of the board of directors, who were present at the meeting held on February 27, 1989, in support of their contention.

In reviewing these excerpts, we have found the testimony to be conflicting regarding the instructions given to Powell by the board on specifically terminating Allen. One board member testified that Powell was given the authority to "separate" Allen from his employment with the corporation, while another board member testified that it was left up to Powell to handle the "Corbett Allen affair" as he deemed necessary.

We conclude that the evidence fails to conclusively establish that Powell was acting in good faith and in the best interest of the corporation when he fired Allen. In this regard, the evidence raises an inference that Powell discharged Allen for personal reasons. *See Bates v. Dallas Independent School Dist.,* 952 S.W.2d 543, 551 (Tex.App.—Dallas 1997, writ denied)(officials and employees can be held personally liable if they exceed the legitimate bounds of their office); *see also Kelly v. Galveston County,* 520 S.W.2d 507

(Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). These matters must be resolved by the fact trier in determining the essential elements of Powell's and the corporation's affirmative defense.

Consequently, we sustain Allen's second point of error. Accordingly, we reverse the judgment and remand the case to the trial court for a trial on the merits.